SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
ashartsis@sflaw.com
JOSEPH V. MAUCH (Bar #253693)
jmauch@sflaw.com
DANIEL M. PONIATOWSKI (Bar #306754)
dponiatowski@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111-3598
Telephone:    (415) 421-6500
Facsimile:     (415) 421-2922

Attorneys for Plaintiff
SIMPSON STRONG-TIE COMPANY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMPSON STRONG-TIE COMPANY INC., | Case No. 5:20-cv-06957-VKD |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| MITEK, INC., | Date:        March 23, 2021 |
| Defendant. | Time:       10:00 a.m.<br>Dept.:       Zoom Conference<br>Judge:      Hon. Virginia K. DeMarchi |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   SUMMARY OF FACTUAL ALLEGATIONS .......................................................... 3

III.  LEGAL STANDARD ................................................................................................. 5

IV.   ARGUMENT .............................................................................................................. 5

      A.   Simpson Has Plausibly Alleged An Actionable False Statement Under The Lanham Act, The UCL And The FAL .......................................................... 5

      B.   Simpson Has Adequately Stated A Claim Under The UCL ............................ 9

      C.   Simpson Has Standing To Assert Its UCL And FAL Claims ....................... 11

      D.   Simpson Has Stated A Claim for Passing Off Under the Lanham Act ......... 14

      E.   Simpson Has Stated a Claim for Infringement of its Registered Copyrights ...... 15

            1.   Simpson Has Plausibly Alleged Copyright Infringement ...................... 16

            2.   The Determination Of Whether The Product Names Are Protected Elements Is Not The Proper Subject Of A Motion To Dismiss ............... 17

            3.   Simpson's Product Names Are Subject To Copyright Protection .......... 18

V.    CONCLUSION ......................................................................................................... 25

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
5:20-cv-06957-VKD

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### FEDERAL CASES

4

*AddVenture Prods. v. Simply Smashing, Inc.,*

5

2007 U.S. Dist. LEXIS 69607 (S.D. Cal. Sept. 20, 2007)........................................6

6

*Allergan United States v. Imprimis Pharms., Inc.,*
2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017)...................................12

7

*Am. Dental Ass'n v. Delta Dental Plans Ass'n,*

8

126 F.3d 977 (7th Cir. 1997) .....................................................................18, 24, 25

9

*Apple Computers, Inc. v. Microsoft Corp.,*

10

35 F.3d 1435 (9th Cir. 1994) .................................................................................20

11

*Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.,*
421 F. 3d 981 (9th Cir. 2005) ..................................................................................6

12

*Ashcroft v. Iqbal,*

13

556 U.S. 662 (2009)..................................................................................................5

14

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.,*

15

402 F.3d 700 (6th Cir. 2005) ............................................................................21, 23

16

*Auto. Data Sols., Inc. v. Directed Elecs. Can., Inc.,*
2018 U.S. Dist. LEXIS 220955 (C.D. Cal. Aug. 15, 2018)...................................16

17

*Bell Atl. Corp. v. Twombly,*

18

550 U.S. 544 (2007)..................................................................................................5

19

*Blinded Veterans Ass'n v. Blinded Am. Veterans Found.,*

20

872 F.2d 1035 (D.C. Cir. 1989)..............................................................................15

21

*BottleHood, Inc. v. Bottle Mill,*
2012 U.S. Dist. LEXIS 57381 (S.D. Cal. Apr. 23, 2012).....................................17

22

*Clorox Co. v. Reckitt Benckiser Grp. PLC,*

23

398 F. Supp. 3d 623 (N.D. Cal. 2019) ...................................................................12

24

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,*

25

911 F.2d 242 (9th Cir. 1990) ...................................................................................6

26

*Cooling Sys. & Flexibles v. Stuart Radiator, Inc.,*
777 F.2d 485 (9th Cir. 1985) .................................................................................20

27

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*

28

539 U.S. 23 (2003)..................................................................................................14

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- i -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

*Dezendorf v. Twentieth Century-Fox Film Corp.*,
  99 F.2d 850 (9th Cir. 1938) ...................................................................................17

*Dial-A-Mattress Franchise Corp. v. Page*,
  880 F.2d 675 (2d Cir. 1989)...................................................................................15

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Studies*,
  2016 U.S. Dist. LEXIS 68890 (C.D. Cal. May 25, 2016) ......................................17

*E. W. Sounds, Inc. v. Phoenix*,
  2012 U.S. Dist. LEXIS 130257 (C.D. Cal. Sep. 10, 2012).....................................16

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  946 F.3d 1040 (9th Cir. 2020) ...............................................................................14

*Falcon Stainless, Inc. v. Rino Cos.*,
  2011 U.S. Dist. LEXIS 160984 (C.D. Cal. Aug. 2, 2011).................................15, 21

*Feist Publ'ns v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)...................................................................................16, 18, 19

*K-S-H Plastics, Inc. v. Carolite, Inc.*,
  408 F.2d 58 (9th Cir. 1969) ...............................................................................15, 21

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ................................................................................15

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010) ...........................................................................17

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993)..................................................................................................5

*Lona's Lil Eats, LLC v. Doordash, Inc.*,
  2021 U.S. Dist. LEXIS 8930 (N.D. Cal. Jan. 18, 2021) ....................................12, 13

*Microsoft Corp. v. MY Choice Software, LLC*,
  2015 U.S. Dist. LEXIS 187011 (C.D. Cal. Sept. 22, 2015)....................................16

*Mohebbi v. Khazen*,
  2014 U.S. Dist. LEXIS 168351 (N.D. Cal. Dec. 4, 2014) (Freeman, J.)..................7

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ....................................................................................5

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*,
  897 F.3d 1008 (9th Cir. 2018) ................................................................................14

*Outdoor Media Grp., Inc. v. City of Beaumont*,
  506 F.3d 895 (9th Cir. 2007) ....................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- ii -

*P & P Imps., LLC v. Festival Trading, Inc.*,
   2018 U.S. Dist. LEXIS 225770 (C.D. Cal. May 15, 2018) ..................................17

*Practice Mgmt. Information Corp. v. Am. Med. Ass'n*,
   121 F.3d 516 (9th Cir.) .........................................................................21, 23, 24

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ....................................................................................5

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012) ....................................................................................22

*Southco, Inc. v. Kanebridge Corp.*,
   390 F.3d 276 (3d Cir. 2004) ............................................................................21, 22

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ..................................................................................6

*Spicy Beer Mix, Inc. v. New Castle Bev., Inc.*,
   2014 U.S. Dist. LEXIS 181385 (C.D. Cal. Aug. 1, 2014) ....................................15

*SPS Techs., LLC v. Briles Aero., Inc.*,
   2019 U.S. Dist. LEXIS 219610 (C.D. Cal. Oct. 30, 2019) ...................................12

*Stern v. Does*,
   978 F. Supp. 2d 1031 (C.D. Cal. 2011) .................................................................22

*Syrus v. Bennett*,
   455 F. App'x 806 (10th Cir. 2011) .........................................................................22

*Thomson v. HMC Grp.*,
   2014 U.S. Dist. LEXIS 195261 (C.D. Cal. Feb. 18, 2014) ...................................17

*Toro Co. v. R&R Prods. Co.*,
   787 F.2d 1208 (8th Cir. 1986) ................................................................................24

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
   2014 U.S. Dist. LEXIS 166982 (N.D. Cal. Dec. 2, 2014) (James, J.) .....................7

*Upper Deck Co. v. Panini Am., Inc.*,
   2020 U.S. Dist. LEXIS 114075 (S.D. Cal. June 29, 2020) ......................................7

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   2010 U.S. Dist. LEXIS 47453 (E.D. Cal. Apr. 20, 2010) ......................................12

*W. Pub. Co. v. Mead Data Cent., Inc.*,
   799 F.2d 1219 (8th Cir. 1986) ................................................................................25

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) .................................................................10

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- iii -

*Wilden Pump and Eng'g v. JDA Global*,
  2012 U.S. Dist. LEXIS 155599 (C.D. Cal. Oct. 29, 2012) ...................................15, 21

*ZL Techs. Inc. v. Gartner, Inc.*,
  2009 U.S. Dist. LEXIS 102681 (N.D. Cal. Nov. 4, 2009) ...................................12

**STATE CASES**

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ...................................10

*Daro v. Super. Ct.*,
  151 Cal. App. 4th 1079 (2007) ...................................10

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ...................................10

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ...................................12

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
  214 Cal. App. 4th 544 (2013) ...................................12

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ...................................11, 12

**FEDERAL STATUTES**

15 U.S.C. § 1125(a) ...................................14, 15

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2) ...................................5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17204 ...................................11

Cal. Bus. & Prof. Code § 17535 ...................................11

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...................................*passim*

California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ...................................*passim*

**OTHER AUTHORITIES**

1 Nimmer on Copyright § 1.08[C][1] ...................................19

1 Nimmer on Copyright § 2.01[B][3] ...................................22

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

## I.   <u>INTRODUCTION</u>

In its Motion to Dismiss ("Motion" or "Mot."), defendant MiTek, Inc. ("MiTek") ignores and mischaracterizes the detailed facts that have been plausibly alleged by Simpson Strong-Tie Company Inc. ("Simpson"). Instead, MiTek conjures up its own set of facts that contradict the specific allegations of the Complaint, which facts will be disproven by Simpson at the appropriate time. Tellingly, MiTek rarely cites or quotes Simpson's actual allegations, which, when properly considered, compel a denial of MiTek's Motion.

MiTek's argument with respect to Simpson's false advertising claims is based on the tautology that because product names are not an "actionable statement," MiTek's materials that use the product names cannot constitute false advertising. When evaluating whether an advertising claim is literally false, however, the claim must be analyzed in its full context. Contrary to MiTek's unsupported assertions that the Complaint includes only "formulaic recitation of the elements" or "bald conclusions," the Complaint includes 89 paragraphs of allegations, approximately two dozen notated images and charts, and over 700 pages of referenced exhibits. Simpson's detailed factual allegations explain and illustrate how MiTek's use of Simpson's proprietary product names as the basis for MiTek product names and as "Reference Numbers" constitutes explicitly and implicitly false statements to consumers.

MiTek's Motion as to Simpson's claims for false advertising under Section 43(a)(1)(B) of the federal Lanham Act, and under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17200 and 17500, respectively, must be denied because Simpson's Complaint has explained in detail the specific ways in which MiTek's use of Simpson product names constitutes false advertising and unfair competition. If the Court concludes that Simpson has stated a claim under either the Lanham Act or the FAL, then Simpson's UCL claim must also survive because a violation of either of these statutes constitutes unlawful, fraudulent, and/or unfair conduct under the UCL. In addition, as a competitor of MiTek that has suffered an injury-in-fact (*e.g.*, diverted sales and loss of goodwill) as a result of MiTek's conduct, Simpson has standing to assert the UCL and FAL claims.

Simpson has also sufficiently pled a claim for passing off. MiTek's papers fail to address

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1  passing off, and instead focus entirely on trademark infringement, a cause of action that Simpson

2  has not asserted here. Although it is true that in some cases passing off can be based on a

3  competitor's use of a trademark, the two causes of action differ and passing off does not require

4  proof that a competitor has used a protectable trademark (*i.e.*, a mark that is either inherently

5  distinctive or that has acquired secondary meaning). To the contrary, passing off can be based on

6  a competitor's use of generic or descriptive terms that are not alleged to be trademarks. Here,

7  Simpson has asserted a viable claim for passing off against MiTek, even though it has not

8  asserted that the product names constitute protectable trademarks.

9        Finally, Simpson has adequately pled a claim for copyright infringement. There is no

10  dispute that Simpson's catalogs are copyrightable, nor is there any dispute that MiTek has copied

11  and used Simpson's proprietary product names. MiTek's Motion is based on unsupported

12  assertions that contradict the allegations of the Complaint and the actual facts in this case. For

13  example, MiTek incorrectly asserts that Simpson's product numbers are "developed using a

14  system where each letter, number, or combination thereof, designates a particular characteristic

15  of the product" and that the product numbers "lack the creativity and originality necessary to

16  qualify for copyright protection." As the Complaint alleges, Simpson uses no such system: the

17  product names are not automatically generated, and the process related to creation of new

18  product names involves significant creativity and originality. *See* Complaint ("Comp.") ¶ 14.

19  Simpson's product names thus constitute protectable elements of the copyrighted works (*i.e.*, the

20  Simpson catalogs), which MiTek has infringed through the specific acts alleged in the

21  Complaint. Based on the copyright cases cited by MiTek, as well as other applicable copyright

22  cases that MiTek failed to cite, Simpson has adequately pled a cause of action for copyright

23  infringement. For the reasons set forth in detail below, MiTek's Motion should be denied in its

24  entirety.[1]

25  _____

26  1 MiTek incorrectly asserts that this lawsuit "is nothing more than a regurgitation of a prior lawsuit." Mot. at 1:1-2. As the Complaint in the prior case makes clear, the prior lawsuit related to MiTek's infringement of Simpson's family of federally-registered STRONG-TIE trademarks

27  through MiTek's use of the infringing TOUGH-TIE trademark on MiTek's knock-off products. After Simpson initiated the prior litigation, MiTek ceased using the infringing TOUGH-TIE

28  trademark.

- 2 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

## II.    <u>SUMMARY OF FACTUAL ALLEGATIONS</u>

Simpson designs, manufactures, markets and sells structural connectors and other product solutions for the construction industry. Comp. ¶¶ 2, 9. Simpson invests heavily in research and development, and has obtained approximately 900 patents over the past 60 years. *Id*. ¶¶ 10, 11.

Each time a new product is developed, Simpson creates a new and original proprietary product name. *Id*. ¶¶ 12-14. The product name includes both (a) a "Part Name" (*e.g.*, "BCS" for a post cap) and (b) a range of "Model Numbers" (*e.g.*, "BC4," "BC46R," etc.). *Id*. ¶¶ 12, 18. Simpson's creation of new product names involves a significant amount of time, effort, creativity and originality. *Id*. ¶ 14. While there is sometimes an acronymic relationship between the product name and the product description, that is not always the case and, even when it is, the decision to use a particular product name is still creative and original. *Id*.

Most of Simpson's proprietary product names have been used for many years and have become well known to consumers. *Id*. ¶¶ 13, 15. Simpson's product names are used throughout its website at strongtie.com, on product packaging, product labels, carton labels, shelf tags, and in its catalogs. *Id*. ¶¶ 16-19, 22-23. Simpson's Wood Construction Connectors Catalog, for example, contains an "Alphabetical Product Index" that lists all of its product names, which also appear on nearly every page of the 339-page catalog. *Id*. ¶¶ 19-20. Simpson owns copyright registrations on each Wood Construction Connectors Catalog dating back to 2000. *Id*. ¶ 21.

MiTek is a direct competitor of Simpson. *Id*. ¶ 24. Many of MiTek's products are knock-offs or close copies of products that Simpson first brought to market. *Id*. MiTek attempts to compete with Simpson, not just by offering knock-offs of Simpson products, but also by trying to convince consumers that the MiTek products are equivalent to or sufficient substitutes for Simpson products. *Id*. ¶ 25. While some of MiTek's products may perform substantially the same as the corresponding Simpson product, many of the MiTek versions are inferior because they have different load values or lack patented features of the Simpson products. *Id*. ¶ 26.

MiTek has copied and used Simpson's proprietary product names to market and sell MiTek's competing products. *Id*. ¶ 27. In some cases, MiTek has copied Simpson proprietary names and used them, with no or minimal variation, as MiTek Part Names and "Stock

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Numbers." *Id*. ¶¶ 27-31. MiTek has also copied and used Simpson's proprietary product names, without authorization or attribution, as "Reference Numbers." *Id*. ¶¶ 27, 32-34. Simpson's Complaint identifies more than 130 different instances where MiTek has copied Simpson's Part Name (*e.g.*, BC/BCS) and/or Model Numbers (*e.g.*, BCS22-4 and BCS23-6). *Id*. ¶¶ 29-31.

MiTek's use of Simpson product names is widespread on MiTek's website, mobile application, and catalogs. *Id*. ¶¶ 27, 35-48. The MiTek 2020 Catalog, for example, includes a "Reference Number Index" with the Simpson Part Names, which are also used throughout the MiTek catalog. *Id*. ¶¶ 42-44. The catalog also includes all of MiTek's Part Names and Stock Numbers, many of which were copied from Simpson and are identical or nearly identical to the Simpson Part Names and Model Numbers. *Id*. MiTek also publishes a "Conversion Guide" that contains two columns, one with "Reference Numbers" (*i.e.*, Simpson Model Numbers) and the other with USP Stock Numbers. *Id*. ¶ 45. The Conversion Guide contains no reference or attribution to Simpson, nor any disclaimer that MiTek has no affiliation with Simpson. *Id*.

MiTek also uses Simpson's proprietary product names on MiTek product packaging, product labels, carton labels, shelf tags, and other point-of-sale marketing materials. *Id*. ¶¶ 46-48. MiTek's Dealer Merchandising Guide and the related materials that MiTek provides to retailers demonstrate that Simpson's proprietary product names have been copied and used in order to market and sell MiTek's competing products. *Id*.

MiTek's acts have deceived a substantial segment of the relevant public to whom the statements have been made and have influenced the purchasing decisions of consumers, including by leading them to believe that MiTek's products are Simpson's products, that MiTek's products are equivalent to Simpson's products and/or that Simpson is affiliated with, authorizes, and/or endorses MiTek and MiTek's products. *Id*. ¶¶ 49-54, 58-60. Simpson has suffered harm by diversion of sales from Simpson to MiTek, and by lessening the goodwill associated with Simpson's products.[2] *Id*. ¶ 61. MiTek's conduct has caused irreparable injury to

---

[2] Although Simpson has alleged that it has suffered harm by direct diversion of sales from Simpson to MiTek, Simpson is seeking only permanent injunctive relief and is not making a claim for damages or restitution. *Id*. ¶¶ 61, 86.

Simpson, and through this action Simpson seeks a permanent injunction to stop MiTek's pattern and practice of copying Simpson's proprietary product numbers. *Id.* ¶ 62.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As MiTek seems to agree, in evaluating such a motion, the Court must engage in a two-step analysis. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 787 (9th Cir. 2012). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim to relief. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).

In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). A complaint thus does not need "detailed factual allegations" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

### A.   Simpson Has Plausibly Alleged An Actionable False Statement Under The Lanham Act, The UCL And The FAL

MiTek's argument that Simpson has failed to state a claim for false advertising under the Lanham Act, California's UCL, and California's FAL because Simpson has not alleged an

- 5 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

actionable statement is based on an incorrect understanding of the law and a mischaracterization of Simpson's factual allegations. First, MiTek wrongly assumes that a false statement must be overt and literal, when, in fact, the law is clear that a claim for false advertising extends to statements that in context are false by implication or innuendo. Second, MiTek ignores and misstates Simpson's allegations regarding the false statements made by MiTek.

MiTek starts in the proper place by citing *Southland Sod* for the proposition that "[t]o demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *See* Mot. at 4:6-9 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). But MiTek ignores the Ninth Circuit's further instruction in *Southland Sod* regarding the importance of analyzing the advertising in its full context and the possibility that such contextualization could render a non-overt statement to be false:

> When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context. *Castrol* [*Inc. v. Pennzoil Co.*], 987 F.2d [939, 946 (3d Cir. 1993)]; *American Home Products Corp. v. F.T.C.*, 695 F.2d 681, 687 (3d Cir. 1982); *see Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 CIV 731 (CSH), 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982) ("In determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other."). Thus courts have held that a claim can be literally false "by necessary implication." *Castrol*, 987 F.2d at 946; *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1193-94 (S.D.N.Y. 1987).

108 F.3d at 1139. Or, as the Ninth Circuit has also put it, "a false advertising cause of action under the [Lanham] Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990); *see also Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F. 3d 981, 985-86 (9th Cir. 2005) (holding the same is true for false advertising claims under FAL and UCL).

Courts in this Circuit and this District routinely follow *Southland Sod*, *Cook*, and *Ariz. Cartridge* to find that a defendant's non-overt advertising statement, when analyzed in its full context, is literally false by necessary implication. *See, e.g.*, *AddVenture Prods. v. Simply*

- 6 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

*Smashing, Inc.*, 2007 U.S. Dist. LEXIS 69607, at *5 (S.D. Cal. Sept. 20, 2007) (holding that allegations that defendant's use of plaintiff's designs on its web site constituted a false statement that defendant was authorized to sell plaintiff's products were sufficient to state a claim of false advertising); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 2014 U.S. Dist. LEXIS 166982, at *42-47 (N.D. Cal. Dec. 2, 2014) (James, J.) (holding that, when considered in their full context, the implication of the defendant's statements was that defendant's paintballs were plaintiff's paintballs, despite defendant's disclaimers); *Mohebbi v. Khazen*, 2014 U.S. Dist. LEXIS 168351, at *34-37 (N.D. Cal. Dec. 4, 2014) (Freeman, J.) (finding defendant "falsely advertised its services by insinuating" that it was approved by a government program and denying a motion to dismiss); *Upper Deck Co. v. Panini Am., Inc.*, 2020 U.S. Dist. LEXIS 114075, at *13-17 (S.D. Cal. June 29, 2020) (finding actionable false statement based on necessary implication of image and denying motion to dismiss false advertising claim). For example, in *Upper Deck*, the plaintiff, a sports trading card company with an exclusive endorsement agreement with Michael Jordan, asserted that the use of Jordan's image on defendant's sports trading cards constituted a false statement about defendant's products and commercial activities by misrepresenting that Jordan authorizes its products when he does not. 2020 U.S. Dist. LEXIS 114075 at *14. Denying the defendant's motion to dismiss the false advertising claim on the basis that plaintiff had not identified an actionable statement, the court, citing *Southland Sod* and *Cook*, held that the image of Michael Jordan, while not overtly false, created an actionable false statement about the nature, characteristics, and qualities of defendant's products. *Id*. at *15-17.

Not only does MiTek mischaracterize the law; it also mischaracterizes the facts alleged in the Complaint. MiTek contends that "MiTek's products names are not themselves 'representations of fact'," that "[o]ne cannot prove the truth or falsity of a product name—it is simply a designation or identifier for a particular product," and that Simpson's "allegations amount to nothing more than a formulaic recitation of the elements of false advertising." Mot. at 4:10-24. These contentions ignore Simpson's actual allegations, which, tellingly, MiTek neither cites nor quotes. Simpson does not allege that MiTek's product names are *per se* the actionable

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

statements, and the allegations pertaining to false advertising in the Complaint—which includes 89 paragraphs of allegations, approximately two dozen notated images and charts, and over 700 pages of referenced exhibits—cannot reasonably be deemed a "formulaic recitation of the elements" or "bald conclusions." Rather, as discussed above, Simpson's detailed factual allegations explain and illustrate how "MiTek's use of Simpson proprietary product names as the basis for MiTek product names and as Reference Numbers constitutes explicitly and implicitly false statements to consumers about the nature, characteristics, and/or qualities of its products on MiTek's website, mobile software application, product catalogs, carton labels, product labels, shelf tags, and other point-of-purchase materials." *See* Comp. ¶ 49; *see also id.* ¶¶ 27-54.

Contrary to MiTek's assertions (*see* Mot. at 4:10-24), Simpson has not failed to explain how MiTek's copying and use of Simpson's proprietary product names constitutes an actionable false statement under the Lanham Act, the UCL, and the FAL. Rather, Simpson has explained in detail the specific ways in which MiTek's use of Part Names and Stock Numbers that are identical to or substantially similar to pre-existing Simpson Part Names and Model Numbers constitutes false statements to consumers:

> 50. MiTek's use of Part Names and Stock Numbers that are identical to or substantially similar to pre-existing Simpson Part Names and Model Numbers in the manner described above is false and misleading, and deceives consumers in a number of ways. First, use of a Simpson product name as a MiTek product name is <u>a literally false statement that the MiTek product is, in fact, a Simpson product</u>. In other words, MiTek's identical and substantially similar product names pass off MiTek products as Simpson products. For example, a MiTek shelf tag using "BP" to identify a product falsely identifies the product as Simpson's BP product, when that is not true. Second, use of a MiTek product name that is identical or substantially similar to a Simpson product name is also <u>false in that it necessarily implies that Simpson and MiTek are affiliated in some way or that Simpson has authorized, endorsed, or approved of MiTek's use of the identical or substantially similar product name</u>. Third, use of a MiTek product name that is identical or substantially similar to a Simpson product name also <u>necessarily and falsely implies that the MiTek product is equivalent to the Simpson product</u>. Even if some consumers become aware that MiTek's products are not Simpson products, and are not affiliated with or endorsed by Simpson, the use of identical or substantially similar product names necessarily and falsely implies that the two products are equivalent, when in fact they are not.

Comp. ¶ 50 (emphasis added). The Complaint also specifically explains how MiTek's use of Simpson product names as Reference Numbers and Reference Series also constitutes false advertising, even when the MiTek product name is not identical or substantially similar to a

- 8 -

Simpson product name:

> 51. Even when the MiTek product name is not identical or substantially similar to a Simpson product name, MiTek's use of Simpson product names as Reference Numbers and Reference Series in the manner described above is likewise false and misleading, and deceives consumers in a number of ways. First, use of a Simpson product name as a Reference Number is a literally false statement that the MiTek product identified by the Reference Number is the "referenced" Simpson product. As with MiTek's use of Simpson product names as MiTek product names, using Simpson product names as Reference Numbers passes off MiTek products as Simpson products. For example, a MiTek shelf tag with the TAZ Reference Number falsely identifies the product as Simpson's TAZ product, when that is not true. Second, use of a Simpson product name as a Reference Number is also false in that it necessarily implies that Simpson and MiTek are affiliated in some way or that Simpson has authorized, endorsed, or approved of MiTek's use of the proprietary Simpson product name as a Reference Number. Third, use of a Simpson product name as a Reference Number also necessarily and falsely implies that the MiTek product is equivalent to the Simpson product. Even if some consumers become aware that MiTek's products are not Simpson products, and are not affiliated with or endorsed by Simpson, the use of the proprietary Simpson product name as a Reference Number necessarily and falsely implies that the two products are equivalent, when in fact they are not.

*Id.* ¶ 51 (emphasis added).

Simpson's allegations plausibly allege actionable false statements by MiTek. Simpson does not need to allege that MiTek overtly stated that "MiTek products are Simpson products" or "Simpson endorsed MiTek's use of Simpson product names" or "MiTek products are equivalent to Simpson products" in order to allege actionable false statements. As in *AddVenture*, *United Tactical*, *Mohebbi*, and *Upper Deck*, alleged statements that are overtly (*i.e.*, literally) false or false by necessary implication are sufficient to state a claim. Indeed, the statements here, where MiTek used Simpson product names to identify its own products and as "Reference Numbers" on its products, are much more direct and overt than the statements held actionable in *Upper Deck*, which statements consisted only of images of Michael Jordan on certain trading cards.

### B.   Simpson Has Adequately Stated A Claim Under The UCL

For purposes of the UCL, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. "[A] business act or practice need only meet one of the three criteria—unlawful, unfair, or

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

fraudulent—to be considered unfair competition under the UCL." *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1093 (2007). Simpson has stated a UCL claim on every conceivable basis.

MiTek contends that Simpson has failed to allege facts sufficient to state a claim under the "unfair" or "unlawful" prongs of the UCL (*see* Mot. at 5:25-6:4), but this myopic argument ignores Simpson's allegations and is meritless. MiTek appears to admit, as it must, that if Simpson has stated a false advertising claim—which Simpson has for the reasons stated above— it has also stated a UCL claim. *See id.* at 3:21-25 ("Because UCL and FAL claims are 'substantially congruent to claims made under the Lanham Act,' and because all three of Simpson's claims are premised upon the same conduct, the analysis of whether Simpson has alleged actionable statements in Counts I, II, and IV is the same.") (internal citation omitted) (quoting *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007)); *see also Brockey v. Moore*, 107 Cal. App. 4th 86, 98 (2003) ("A violation of the [FAL] is a violation of the UCL."). But MiTek then disregards the fact that not only do Simpson's allegations regarding MiTek's false advertising—and passing off—independently establish a UCL violation, they *also* do so under the "unlawful" and "unfair" prongs.

As to the unlawful prong, "the UCL borrows violations of other laws and makes them independently actionable as unfair competitive practices." *Daro*, 151 Cal. App. 4th at 1093 (internal quotations and citation omitted). Citing the appropriate statutes, Simpson has adequately pled that MiTek engaged in false advertising under the Lanham Act (Count I), false advertising under the FAL (Count II), and passing off under the Lanham Act (Count III). Comp. ¶¶ 55-75. The detailed factual allegations supporting these claims span some 30 pages. *See, e.g., id.*¶¶ 9-54. In the face of these allegations, there is no plausible argument Simpson has failed to state a UCL claim under the "unlawful" prong. *See Daro*, 151 Cal. App. 4th at 1093 (explaining that the "unlawful" prong "embraces anything that can properly be called a business practice and that at the same time is forbidden by law") (internal quotations and citation omitted).

These allegations also satisfy the UCL's "unfair" prong. Courts are not in agreement as to the appropriate test to determine unfairness for a UCL claim in this situation; however, under any potentially-applicable test, Simpson's allegations are more than sufficient. *See Drum v. San*

- 10 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

*Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 253-57 (2010) (describing the various "unfairness" tests under California law). Simpson alleges MiTek systematically appropriated Simpson's product names in an effort to falsely conflate MiTek's products with Simpson's products. Comp. ¶¶ 49-54. Contrary to MiTek's assertions, these falsities both constitute "immoral, unethical, oppressive, unscrupulous or substantially injurious conduct by [MiTek]," and violate "an established public policy," namely, the goal of preventing consumer deception in the marketplace. *See* Mot. at 5:12-16, 5:26-28 (articulating test). There is no utility in MiTek's conduct, other than to unfairly line MiTek's pockets by trading on Simpson's longstanding reputation and good will, all to the detriment of consumers and economic harm of Simpson. *See id.* at 5:9-11 (articulating balancing approach).

### C.   Simpson Has Standing To Assert Its UCL And FAL Claims

The Court should reject MiTek's argument that reliance by Simpson on MiTek's false advertising is a necessary element of Simpson's UCL and FAL claims. UCL and FAL standing is conferred on "any person who has suffered injury in fact and has lost money or property" as a result of the false advertising or otherwise unfair competition. Cal. Bus. & Prof. Code §§ 17204, 17535. This standing provision, added by Proposition 64, was intended to "prevent uninjured private persons from suing for restitution on behalf of others." *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009) (citation omitted). Simpson does not assert claims on behalf of others, but rather alleges that it suffered injury as a direct result of MiTek's false advertising. Specifically, Simpson alleges that consumers relying on MiTek's false advertising were deceived into believing that MiTek's products were substantially equivalent to Simpson's products when in fact they were not, harming Simpson's business, reputation, and good will, among other things. Comp. ¶¶ 49-50, 68-69, 78-79. This is all that the UCL and FAL standing statutes require, and it is more than sufficient to establish Simpson's standing here.

No California court has held that a competitor asserting UCL and FAL claims must plead its own reliance, rather than reliance by customers who were lured away through the defendant's

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

false advertising.[3] The only two California cases MiTek relies on, *In re Tobacco II Cases*, *supra*, and *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011), were brought by consumer plaintiffs, and so are not controlling. Although not a case involving false advertising claims, a California court has held that a business has standing to assert a UCL claim against a competitor, in that case a rival legal services firm engaged in the unauthorized practice of law. *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 547-48 (2013) ("The lack of direct dealings between two business competitors is not necessarily fatal to UCL standing, provided the plaintiff competitor has suffered injury in fact and lost money or property as a result of the defendant competitor's unfair competition.").

MiTek cites various district court cases for persuasive authority purportedly in support of its position on standing. Mot. at 6:9-12, 6:18-24. However, all but two cases, *ZL Techs. Inc. v. Gartner, Inc.*, 2009 U.S. Dist. LEXIS 102681 (N.D. Cal. Nov. 4, 2009), and *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623 (N.D. Cal. 2019), were brought by consumer plaintiffs, not competitors. Other district courts have rejected the notion that a plaintiff must allege its own reliance on a competitor's false advertising to have standing to assert UCL and FAL claims. *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 2010 U.S. Dist. LEXIS 47453, at *7-9 n.3 (E.D. Cal. Apr. 20, 2010) ("Plaintiff is a corporation bringing the UCL cause of action as a competitor, and consequently, is not the type of plaintiff whose standing was targeted by California voters through Proposition 64."); *Allergan United States v. Imprimis Pharms., Inc.*, 2017 U.S. Dist. LEXIS 223117, at *36-41 (C.D. Cal. Nov. 14, 2017) ("Unlike consumers, however, a company is not likely to purchase its competitor's products simply because it saw and relied on an ad. Thus, imposing the reliance requirement on competitor claims would impose a superficial hurdle on competitor plaintiffs seeking to stop or recover for damages caused by their competitor's false advertising."); *SPS Techs., LLC v. Briles Aero., Inc.*, 2019 U.S. Dist. LEXIS 219610, at *18-22 (C.D. Cal. Oct. 30, 2019) ("The Court agrees with *Allergan* ... [p]laintiff does

---

[3] Such a requirement would contradict the legislative intent on the FAL, which was meant to protect both consumers and competitors. *See Kwikset,* 51 Cal. 4th at 320; *Lona's Lil Eats, LLC v. Doordash, Inc.*, 2021 U.S. Dist. LEXIS 8930, at *31-33 (N.D. Cal. Jan. 18, 2021).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

not need to allege their own reliance to establish standing; indeed, under [d]efendants' logic, it would be hard to imagine when a competitor would be able to assert a false advertising claim."); *Lona's Lil Eats*, 2021 U.S. Dist. LEXIS 8930, at \*31-33 (discussing state of the law and concluding that competitor reliance is not required).

*Lona's Lil Eats, supra*, a Northern District opinion issued earlier this year, is the most instructive persuasive authority. In *Lona's Lil Eats*, delivery restaurants brought a class action lawsuit against a competing food delivery service, alleging false advertising under the FAL and UCL, as well as the Lanham Act. 2021 U.S. Dist. LEXIS at \*1-2. The defendant asserted that the plaintiffs lacked standing under the FAL and UCL because the plaintiffs had not alleged that they actually relied on the defendant's false advertising. *Id.* at \*31. After acknowledging the divide on this question among district courts of the Ninth Circuit, Judge Hixson rejected the defendant's argument, finding instead that "the Court is more persuaded that actual reliance isn't required here." *Id.* at \*32-33. The court held that "[a] non-consumer plaintiff can allege false advertising claims under the [UCL] and [FAL] without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection." *Id.* at \*37-38. The court's reasoning spanned several pages (*see id.* at \*33-38), and included the following:

> In the case of a consumer defrauded by a defendant's misrepresentations, reliance is the necessary casual mechanism of fraud. <u>But if every plaintiff in every situation had to prove reliance, it would be hard to imagine when a competitor would be able to assert a false advertising claim, and the California Supreme Court has made clear that the purpose of the false advertising laws is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services</u>.

*Id.* at \*35-36 (internal quotations and citations omitted) (emphasis added).

This reasoning is consistent with a fair and logical interpretation of the UCL and FAL. Indeed, the contrary position is nonsensical, suggesting that Simpson must allege that it relied on MiTek advertisements directed to customers for whose business Simpson and MiTek compete. The clear import of California law, and the legislative intent behind the UCL, is that reliance by the plaintiff is necessary to establish injury where the plaintiff is a consumer, but not where the plaintiff is a competitor who has suffered an injury-in-fact. Thus, Simpson has standing to assert

1   its UCL and FAL claims.

2       **D.**     **Simpson Has Stated A Claim for Passing Off Under the Lanham Act**

3       MiTek's argument against Simpson's passing off claim is squarely founded on the

4   premise that claims brought under Section 43(a)(1)(A) of the Lanham Act, including passing off,

5   require use of a trademark: "Because Simpson does not allege that *the marks* underlying its

6   passing off claim are subject to protection under the Lanham Act, Simpson fails to state a claim

7   for passing off and Count III should be dismissed." Mot. at 9:18-20 (emphasis added). This

8   premise is false. The United States Supreme Court has made clear that Section 43(a) claims do

9   not always require trademarks:

10          The Lanham Act was intended to make "actionable the deceptive and misleading
            use of marks," and "to protect persons engaged in ... commerce against unfair
11          competition." 15 USC § 1127. While much of the Lanham Act addresses the
            registration, use, and infringement of trademarks and related marks, § 43(a), 15
12          U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark
            protection. As originally enacted, § 43(a) created a federal remedy against a
13          person who used in commerce either "a false designation of origin, or any false
            description or representation" in connection with "any goods or services." 60 Stat
14          441.

15   *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003); *see also Enigma*

16   *Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052-53 (9th Cir. 2020)

17   ("[E]ven though the Lanham Act is known as the federal trademark statute, not all claims

18   brought under the statute involve trademarks. The Act contains two parts, one governing

19   trademark infringement and another governing false designations of origin, false descriptions,

20   and dilution."). Passing off is considered a "false designation of origin" claim under Section

21   43(a). *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, 897 F.3d 1008, 1016 (9th Cir. 2018).

22       Numerous courts have thus ruled that a defendant may not use even a generic term (*i.e.*, a

23   term lacking the distinctiveness of a trademark[4]) in a way that is likely to mislead consumers as

24   _____

25   [4] In order to state a cause of action for trademark infringement, the plaintiff must show
    ownership of a protectable mark, which requires alleging that the mark is either inherently
26   distinctive or has acquired secondary meaning. Because passing off may be based on use of a
    generic term, a plaintiff need not assert such allegations. Here, Simpson has asserted that its
27   product names have been used for many years and have become well known to consumers.
    Comp. ¶¶ 13, 15. Simpson strongly disagrees with MiTek's unsupported assertion that the
28   Simpson product names are generic or functional (*see* Mot. at 1:14), although the cases cited
    above demonstrate that passing off does not require proving that a term is distinctive.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

to the origin of the goods. *See, e.g.*, *Dial-A-Mattress Franchise Corp. v. Page*, 880 F.2d 675, 678 (2d Cir. 1989) ("It is … clear that a second comer, though entitled to use a generic term already used by its competitor, may be enjoined from passing itself or its product off as the first user or that user's product and may be required to take steps to distinguish itself or its product from the first user or that user's product."); *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1043 (D.C. Cir. 1989) (holding that "if an organization's own name is generic, a competitor's subsequent use of that name may give rise to an unfair competition claim if the competitor's failure adequately to identify itself as distinct from the first organization causes confusion or a likelihood of confusion"); *see also* 2 Gilson on Trademarks § 7.02[5][b] ("Also, the mark at issue [in a passing off claim] need not even be itself valid and protectable as required in a traditional infringement case."). Here, then, Simpson has asserted a viable claim for passing off even though it has not asserted that the product names constitute protectable trademarks.

The cases that MiTek relies on in support of its position do not compel a different result because none of those cases stand for the proposition that a passing off claim requires a plaintiff to assert ownership of a protectable trademark. The various cases cited by MiTek requiring a plaintiff to allege inherent or acquired distinctiveness are all trademark infringement cases under Section 43(a). *See, e.g.*, *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) (claims for infringement of unregistered trademark and trade dress); *Spicy Beer Mix, Inc. v. New Castle Bev., Inc.*, 2014 U.S. Dist. LEXIS 181385, at *22 (C.D. Cal. Aug. 1, 2014) (infringement of unregistered trademark). The same is true of MiTek's three cases relating to alphanumeric and numeric part codes: *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 58 (9th Cir. 1969); *Falcon Stainless, Inc. v. Rino Cos.*, 2011 U.S. Dist. LEXIS 160984 (C.D. Cal. Aug. 2, 2011); and *Wilden Pump and Eng'g v. JDA Global*, 2012 U.S. Dist. LEXIS 155599 (C.D. Cal. Oct. 29, 2012). Those decisions are inapposite because the plaintiff in each case asserted a trademark infringement claim, not passing off.

### E.     Simpson Has Stated a Claim for Infringement of its Registered Copyrights

MiTek's contention that Simpson has not stated a claim for copyright infringement "[b]ecause neither the product numbers themselves nor the alphabetical index of the same

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

constitutes a protected work" (Mot. at 10:5-6) fails for a number of reasons. First, Simpson has adequately and plausibly alleged infringement of works protected by registered copyrights. Second, if MiTek contests the originality of an element of those works, the ultimate resolution of that issue requires a fact-intensive determination that is not the proper subject of a motion to dismiss. Third, even if the Court were to undertake that determination at this stage of the case, Simpson's product names and Alphabetical Product Index are subject to copyright protection.

### 1.      Simpson Has Plausibly Alleged Copyright Infringement

As MiTek acknowledges, a plaintiff asserting copyright infringement must only establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also E. W. Sounds, Inc. v. Phoenix*, 2012 U.S. Dist. LEXIS 130257, at *6-7 (C.D. Cal. Sep. 10, 2012) ("To withstand a motion to dismiss, a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright."); *Microsoft Corp. v. MY Choice Software, LLC*, 2015 U.S. Dist. LEXIS 187011, at *5-6 (C.D. Cal. Sept. 22, 2015) (Plaintiff "need not plead copyright claims with particularity ... . Plaintiff has adequately alleged both the copyrights allegedly infringed and the nature of the infringement, the exact scope of which, if any, will be developed through discovery."); *Auto. Data Sols., Inc. v. Directed Elecs. Can., Inc.*, 2018 U.S. Dist. LEXIS 220955, at *21 (C.D. Cal. Aug. 15, 2018) (same).

Here, Simpson has more than met this basic pleading requirement. Simpson has alleged that it "owns a valid registered copyright on its Wood Construction Connectors Catalogs" with specified registration numbers for each specified catalog (Comp. ¶ 81; *see id.* ¶ 21); that the registered catalogs contain Simpson Part Names, Model Numbers, and an Alphabetical Product Index (*id.* ¶ 81); that the Simpson Part Names and Model Numbers are developed by Simpson in a manner that "involves a significant amount of creativity and originality" (*id.* ¶ 14); and that MiTek has infringed Simpson's copyrights by copying Simpson's copyrighted works and by creating and distributing substantially similar derivative works (*id.* ¶ 82). MiTek's infringing acts

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 16 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1    include copying and using Simpson Part Names and Model Numbers in MiTek's catalogs and

2    marketing materials, as described in detail in the Complaint, which infringing works include, but

3    are not limited to, MiTek's 2018 and 2020 catalogs, MiTek's Conversion Guide, MiTek's iOS

4    and Android mobile apps, and MiTek's website at www.mitek-us.com. *Id.*

5

6            **2.    The Determination Of Whether The Product Names Are Protected Elements Is Not The Proper Subject Of A Motion To Dismiss**

7            The question of whether an alleged work, or an element of that work, is sufficiently

8    original and creative for copyright protection is a fact-intensive question that is premature at the

9    motion to dismiss stage. *See, e.g.*, *Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850,

10   851 (9th Cir. 1938) (The question of originality in copyright law "is one of fact, not of law; one

11   that may not be summarily disposed of upon a motion to dismiss, but which must be established

12   by proof."); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 710 (9th Cir. 2010) (noting that

13   the determination of whether an item is an "uncopyrightable 'useful article'" is a fact-intensive

14   one that must be submitted to the jury when there is a factual dispute); *BottleHood, Inc. v. Bottle*

15   *Mill*, 2012 U.S. Dist. LEXIS 57381, at *8-9 (S.D. Cal. Apr. 23, 2012) (evaluating whether the

16   alleged work is protectable is "not an appropriate determination on a motion to dismiss, even if a

17   fact-finder may ultimately conclude the work does not qualify for copyright protection");

18   *Thomson v. HMC Grp.*, 2014 U.S. Dist. LEXIS 195261, at *8-9 (C.D. Cal. Feb. 18, 2014)

19   ("Determining whether [the alleged works are copyrightable] ... requires a detailed factual

20   analysis. This is inappropriate in ruling on a motion to dismiss."); *Divine Dharma Meditation*

21   *Int'l Inc. v. Inst. of Latent Energy Studies*, 2016 U.S. Dist. LEXIS 68890, at *11-13 (C.D. Cal.

22   May 25, 2016) (holding dismissal "unwarranted" based on defendant's argument that the alleged

23   work was "not protectable subject matter under copyright law" because the issue was "one that

24   may not be disposed of upon a motion to dismiss") (citation omitted); *P & P Imps., LLC v.*

25   *Festival Trading, Inc.*, 2018 U.S. Dist. LEXIS 225770, at *17-18 (C.D. Cal. May 15, 2018)

26   (denying motion to dismiss because argument that copyrighted works do not qualify for

27   copyright protection requires a detailed factual analysis).

28           Here, MiTek does not contest that Simpson's registered catalogs are works subject to

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 17 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

copyright protection. Instead, MiTek relies on unsupported attorney argument to assert that Simpson's product names and Alphabetical Product Index are elements of the catalogs that "lack the creativity and originality necessary to qualify for copyright protection." *See* Mot. at 11:3-9. Simpson's plausible allegations—including that Simpson employees spend considerable time naming the product and creating a new and original Part Name and Model Number (*see* Comp. ¶ 14)—are sufficient to defeat this Motion, and the detailed factual determination required to ultimately resolve this issue must wait until summary judgment or trial.

### 3.   Simpson's Product Names Are Subject To Copyright Protection

When the Court does ultimately determine whether Simpson's product names and Alphabetical Product Index[5] are elements of Simpson's registered catalogs entitled to protection, the facts and law will establish that these elements possess the requisite originality and creativity.

### a.   Simpson's Product Names are Original, Creative Works

The basic test for copyright protection is set forth in *Feist*: "To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." 499 U.S. at 345 (internal citation omitted). For the reasons set forth below, including the body of case law covering this topic, Simpson's alphanumeric product names satisfy this test and are protectable elements of the copyrighted works. *See, e.g.*, *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997) (hereinafter "*ADA*") (holding lists of numeric codes were original works of authorship entitled to protection).

First, <u>Simpson's product names are original expressions, not discovered facts</u>. "No one may claim originality as to facts. This is because facts do not owe their origin to an act of authorship. The distinction is one between creation and discovery: the first person to find and

---

[5] MiTek mischaracterizes Simpson's claims regarding the Alphabetical Product Index and analogizes such claims to asserting copyright infringement in a book because a person copies the table of contents. Mot. at 2:14-16. Just as the product names are protectable elements of the copyrighted work, a complete list of the product names appearing in the catalog is also protected by copyright. Here, MiTek has copied not only the individual product names, but also the entire list of product names, both of which constitute copyright infringement.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    report a particular fact has not created the fact; he or she has merely discovered its existence."

2    *Feist*, 499 U.S. at 347 (internal citations omitted). As discussed above and as alleged in the

3    Complaint, the process related to Simpson's creation of new product names involves a

4    significant amount of creativity and originality. Comp. ¶ 14. The Part Names and Model

5    Numbers are not facts that Simpson discovered, nor are they automatically generated by a system

6    adopted by Simpson. Simpson can establish that it made decisions—often with vigorous internal

7    debate—to express the product names in certain ways and not others.[6]

8          Second, "the requisite level of creativity is extremely low; even a slight amount will

9    suffice. The vast majority of works make the grade quite easily, as they possess some creative

10   spark, 'no matter how crude, humble or obvious' it might be." *Feist*, 499 U.S. at 345-46 (quoting

11   1 Nimmer on Copyright § 1.08[C][1]). Simpson's product names may not evince the same level

12   of creativity as a painting or pop song, but they certainly qualify for protection.

13         Third, the product names are not an unprotectable idea or "system." MiTek asserts that

14   _____

15   [6] As merely one of countless examples that will be proven at trial, one of Simpson's recent

16   patent applications covers a "**connector kit**" that "includes a **steel ledger plate**, a **compression
     strut**, two … **tension screws** and six … **shear screws**. Designed so the two **tension screws** pass

17   through the mortar into the **structural framing**, and the **compression strut** transfers
     **compression** forces from the **ledger plate** to the **rim joist**. The **system** enables the **ledger** to
     hang freely without bearing on the **brick veneer**." *See* 2020 Wood Construction Connectors

18   Catalog (ECF No. 1-1) at 115-116 (emphasis added). The new kit provides a "solution for safely
     adding a **deck** to an existing house with **brick veneer** exterior. It attaches a **wood ledger** to the

19   **framing** through the **veneer**." *Id.* Because the product was introduced after the current
     nomenclature guide was published, it does not appear in the list of products. Presumably MiTek

20   will assert that no creativity was involved because BVLZ signifies "Brick Veneer Ledger
     Connector" with "ZMAX coating." But this ignores that each of the terms underlined above

21   appears in the nomenclature guide: connector (C), kit (KT) , steel (S), ledger (L), plate (P),
     compression (C), strut (S), tension (T), screws (S), shear (S), structural (S), framing (F), rim joist

22   (RJ), brick (B), veneer (V) and deck (D). If Simpson had named this product RJAKT or DLBV,
     MiTek would presumably assert that no creativity was involved because "Rim Joist Attachment

23   Kit" or "Deck Ledger for Brick Veneer" was developed using a system where each letter
     designates a particular characteristic of the product. While it may be possible after the fact to

24   correlate new product names to the nomenclature guide (which expands as new Part Names are
     introduced), each product name is the result of a creative process and there are a multitude of

25   acronyms that could have been used to identify the new product. The same letter is used for
     many different purposes (*e.g.*, B may signify Base, Bolt, Beam, Bent, Bearing, Brick, etc.) and

26   the order of the letters may vary (*e.g.*, DLBV, BVDL, BLDV, etc.). If one were to study the
     nomenclature guide to determine what BVLZ signifies, one might guess "Bent V-Shaped

27   Lateral" Connector or "Base Vertical Light" Connector with ZMAX® (a Simpson registered
     trademark) or one of countless other possible product names. It is only after one reviews

28   Simpson's marketing literature for the new product that one would guess that BVLZ identifies a
     Brick Veneer Ledger Connector with ZMAX® coating.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

"Simpson's product numbers are developed using a system where each letter, number, or combination thereof, designates a particular characteristic of the product." Mot. at 11:3-5. This assertion mischaracterizes the facts as alleged and as will be established when this case proceeds. Paragraph 12 of the Complaint, which MiTek cites for support, does *not* state that each letter, number, or combination, systematically or otherwise, designates a particular characteristic; it states only that there is a different Model Number for each product model and that different models have different characteristics. *See* Comp. ¶ 12 ("The product name includes ... a range of what Simpson refers to as 'Model Numbers' consisting of additional numbers and letters added to the Part Name to identify the various models of the part with differing attributes, including, in some cases, distinct sizes, temperature ratings, and load values."); *see also id*. ¶ 14 ("Simpson product names are not randomly generated; nor has Simpson adopted a product nomenclature system that automatically generates or results in a product name when a new product is developed."). Simpson, moreover, is not trying to protect the idea of having alphanumeric product names or arguing that MiTek is not allowed to have its own product names. Simpson is merely asserting that MiTek cannot copy Simpson's particular product names and use them on MiTek products, either as MiTek product names or Reference Numbers.

Fourth, the inherent or practical constraints of alphanumeric product names do not limit the possible expressions to one or a few possible expressions. *See Apple Computers, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("[W]hen similar features in a [copyrighted work] are as a practical matter indispensable, or at least standard, in the treatment of a given [idea], they are treated like ideas and are therefore not protected by copyright.") (internal quotations and citations omitted); *Cooling Sys. & Flexibles v. Stuart Radiator, Inc.*, 777 F.2d 485, 491 (9th Cir. 1985) (the fewer the methods of expressing an idea, the "thinner" the copyright protection). "While there is sometimes an acronymic relationship between the product name and the product description, that is not always the case and, even when it is, the decision to use a particular product name is still creative and original."[7] Comp. ¶ 14. There are a multitude

---

[7] The Court should reject MiTek's attempt to "cherry pick" a few examples out of Simpson's expansive product line in order to argue for an alleged descriptive or functional meaning. *See*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

of ways of expressing a numeric or alphanumeric code for connectors and fasteners. MiTek intentionally copied Simpson's product names, not because it had to, but because it wanted to trade on Simpson's goodwill and deceive customers about the relationship and/or equivalence between the parties' products. *See id.* ¶¶ 29, 31, 49, 52.

Fifth, even if Simpson's product codes have in some way become a *de facto* industry standard—which MiTek alludes to (*see* Mot. at 9:10-15) and Simpson denies—this does not preclude copyright protection and <u>courts have extended protection to industry standards</u>. *See, e.g.*, *Practice Mgmt. Information Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 518-20 (9th Cir.), *cert. denied*, 522 U.S. 933 (1997) (holding adoption of American Medical Association ("AMA") codes for medical procedures as a standard for reporting medical procedures did not preclude copyright protection). While it is true that Simpson's long-standing product names have been used for many years and have become well known to consumers (*see* Comp. ¶ 13), that does not mean that MiTek's infringement of Simpson's copyrights is permissible.

### b.    Simpson's Product Names are Protectable Elements Under Applicable Case Law

MiTek's argument against the protectability of Simpson's product names relies on two out-of-circuit decisions—*Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3d Cir. 2004), and *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700 (6th Cir. 2005)—but that reliance is misplaced because those two decisions are distinguishable and other authority, including Ninth Circuit authority, compels a finding of copyright protection.[8]

In *Southco*, the Third Circuit distinguished between the plaintiff's numbering system, which it found to be an unprotectable "idea," and the particular product numbers. 390 F.3d at 282. The Court found that the plaintiff used creativity to create the numbering system, but

---

Mot. at 8:22-28. As noted above, Simpson will introduce evidence showing the creative process involved for each of its new products even where there is an acronymic relationship.

[8] As discussed above in Section IV.D., MiTek also relies on *K-S-H Plastics, Inc.*, 408 F.2d at 58; *Falcon Stainless, Inc.*, 2011 U.S. Dist. LEXIS 160984 at *3-5, and *Wilden Pump and Eng'g*, 2012 U.S. Dist. LEXIS 155599 at *1-7, in support of its passing off arguments. Not only are those cases inapposite because the part numbers at issue were far less distinctive and creative than Simpson's product names, but none involved copyright infringement.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

"[o]nce these decisions were made, the system was in place, and all of the products in the class could be numbered without the slightest element of creativity." *Id*. Those are not the facts here. Simpson's product names are distinctly different than the product numbers in *Southco* in ways that go to the heart of the Third Circuit's decision. As alleged and as will ultimately be proven, Simpson's product names are alphanumeric names that are each individually decided upon. *See* Comp. ¶¶ 13-14. Thus, unlike *Southco*, where the system created by the plaintiff determined the number code for each product, here Simpson uses creativity to create each alphanumeric name.

The Third Circuit also held that the plaintiff's part numbers were excluded from copyright protection "because they are analogous to short phrases or the titles of works." *Southco*, 390 F.3d at 285. The Court based this holding on a regulation issued by the Copyright Office stating that "words and short phrases such as names, titles, and slogans" are generally not subject to copyright and an amicus brief from the U.S. government stating that "[a] short phrase such as a part number typically lacks any creativity whatsoever." *Id*. at 285-86. This discussion occurred in the context of *Southco*'s pre-determined, un-creative number system, but there is no outright ban on finding copyright protection for alphanumeric or numeric codes, or lists of such codes, and Simpson's creative alphanumeric product names justify protection. Indeed, courts have recognized that there are exceptions to the general rule that "short phrases" are not protectable where a short phrase is sufficiently creative. *See, e.g., Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012) ("while both this court and the Copyright Office have generally recognized that short phrases may not be subject to copyrightability, applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable") (internal citations omitted); *Syrus v. Bennett*, 455 F. App'x 806, 809 (10th Cir. 2011) ("[A] short phrase may command copyright protection if it exhibits sufficient creativity ... The smaller the effort (*e.g.*, two words) the greater must be the degree of creativity in order to claim copyright protection.") (second alteration in original) (quoting 1 Nimmer on Copyright § 2.01[B][3]); *Stern v. Does*, 978 F. Supp. 2d 1031, 1041-42 (C.D. Cal. 2011) ("[T]he copyrightability of a very short textual work—be it word, phrase, sentence, or stanza—depends on the presence of creativity. The

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1   opening sentence of a poem may contain sufficient creativity to warrant copyright protection

2   whereas a more prosaic sentence of similar length may not.").

3      The other case relied on by MiTek, *ATC*, closely follows *Southco* and is distinguishable

4   for similar reasons. In *ATC*, the Sixth Circuit, held that the plaintiff's product codes—which, as

5   in *Southco*, were a short series of numbers, not alphanumeric names—were not protectable based

6   on their lack of originality and the merger doctrine (*i.e.*, the exclusion of an expression from

7   copyright protection if it is "merged" inseparably with an idea). 402 F.3d at 707. The Sixth

8   Circuit acknowledged that "[c]lassification schemes can in principle be creative enough to satisfy

9   the originality requirement of copyright protection," but, following the reasoning of *Southco*,

10  found that any creativity on the part of plaintiff related to the *idea* behind the numbering

11  "system," not to the expressions themselves, which were determined by the system and "do not

12  evidence any such creativity." *Id*. at 708-9. The Sixth Circuit further explained:

13      Even assuming, *arguendo*, that some strings of numbers used to designate an item
    or procedure could be sufficiently creative to merit copyright protection, the parts
14      numbers at issue in the case before us do not evidence any such creativity. ATC's
    allocation of numbers to parts was an essentially random process, serving only to
15      provide a useful shorthand way of referring to each part. The only reason that a
    "sealing ring, pump slide" is allocated number 176 is the random ordering of sub-
16      categories of parts, and the random ordering of parts within that sub-category.

17  *Id*. at 709. Here, however, unlike in *ATC*, the Simpson product names are not determined by a

18  static or absolute system and are not "random." As alleged and as will ultimately be proven,

19  Simpson "tak[es] into account a variety of factors including the description of the product, ease

20  of use for consumers, and the existence of other Simpson product names" when determining

21  each Part Name and Model Number.[9] *See* Comp. ¶¶ 13-14.

22     Not cited by MiTek is a body of case law in a number of circuits, including this one, in

23  which courts have found numeric and alphanumeric codes to be sufficiently original and creative

24  to warrant copyright protection. For example, in *Practice Mgmt.*, *supra*, the Ninth Circuit

25  considered whether the AMA could enforce a copyright for its lists of five-digit codes and short

26

27  [9] MiTek's request for an order requiring Simpson to provide further information regarding its
    product names if it contends they are not a system (*see* Mot. at 11 n.5) is meritless and
28  unwarranted. As discussed above, a plaintiff need not plead a copyright claim with specificity
    and MiTek has not provided any support for, or properly moved for, such an order.

descriptions of medical procedures against a publisher of medical books that used the codes. 121 F.3d at 517-18. The court held that the adoption of the codes as a standard did not preclude copyright protection and the AMA could enforce its copyright against defendant. *Id.* at 518-20. Likewise, in *ADA*, *supra*, the Seventh Circuit considered whether a list of ADA numeric codes, with descriptions of the dental procedures represented by the codes, was copyrightable. 126 F.3d at 978. The court held that the numbers were original works of authorship: "The number assigned to any one of the … descriptions could have had four or six digits rather than five; guided tissue regeneration could have been placed in the 2500 series rather than the 4200 series; again any of these choices is original to the author of a taxonomy, and another author could do things differently." *Id.* The Court further held that the code number list was not a determinative "system," which would make it ineligible for copyright protection. *Id.* at 980-81.

Perhaps most instructive and on point is *Toro Co. v. R&R Prods. Co.*, in which the Eighth Circuit held that the list of parts numbers at issue was "not copyrightable because it lack[ed] originality." 787 F.2d 1208, 1215 (8th Cir. 1986). However, the evidence showed that the list was created by "arbitrarily assigning to a particular replacement part a random number when [the manufacturer] creates the part." *Id.* at 1213. The court denied protection because "[t]he random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship." *Id.* But the court's determination would have been different if it had been presented with Simpson's product names: "This is not to say that all parts numbering systems are not copyrightable. A system that uses symbols in some sort of meaningful pattern, something by which one could distinguish effort or content, would be an original work." *Id.*

> We do not believe that the idea of a parts numbering system is susceptible of only a very limited number of expressions. Such systems will vary in complexity and composition as the type of information attempted to be encoded into the designation and the method of encoding varies. Granting a particular company a copyright in its own system or systems would not necessarily monopolize the idea of a parts numbering system.

*Id.* at 1212.

Here, the cases cited above support a finding that Simpson's registered catalogs are copyrightable works and that the product names and alphabetical listing of product names within

- 24 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

the catalogs are protectable elements that MiTek cannot copy or use in its own catalogs and materials without authorization. *See also W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1226-27 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987) (noting, in a case addressing unauthorized use of plaintiff's pin cites, "[t]he key to this case, then, is not whether numbers are copyrightable, but whether the copyright on the books as a whole is infringed by the unauthorized appropriation of these particular numbers" and holding "[plaintiff's] case arrangements, an important part of which is internal page citations, are original works of authorship entitled to copyright protection"). In particular, the general prohibition against registering copyrights for "short phrases" does not preclude protection for alphanumeric product codes within copyrighted works when those codes are the result of original and creative expression and not a pre-determined system. *See, e.g.*, *ADA*, 126 F.3d at 979-980 (finding that five digit numbers possess requisite creativity for protection). The cases cited above also contradict MiTek's argument that product names are not entitled to protection because certain letters or numbers within the product names may impart information that describes the products. Indeed, the *Toro* court recognized that its hypothetical numbering system entitled to protection would be creative because it "encodes" information in "a meaningful pattern" and not an arbitrary way. *See* 787 F.2d at 1212-13. Finally, like the product codes and code lists in *Practice Mgmt.* and *ADA*, Simpson's individual product names and its Alphabetical Product Index are protectable elements of the registered works that MiTek has impermissibly copied without authorization, which copying constitutes copyright infringement under the cases cited above.

## V.    **CONCLUSION**

For all the foregoing reasons, MiTek's Motion should be denied, or, in the alternative, if the Motion is granted in full or in part, Simpson should be given leave to amend its Complaint.

Dated:  February 18, 2020          SHARTSIS FRIESE LLP

                                            */s/ Joseph V. Mauch*
                                  By:       JOSEPH V. MAUCH

                                  Attorneys for Plaintiff
                                  SIMPSON STRONG-TIE COMPANY INC.

8874852

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598