1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                         SAN JOSE DIVISION

7

8   SIMPSON STRONG-TIE COMPANY          Case No.  20-cv-06957-VKD
    INC.,
9                                        **ORDER RE MOTIONS FOR
              Plaintiff,                  SUMMARY JUDGMENT**
10
         v.                              Re: Dkt. Nos. 70, 78
11
    MITEK INC.,                          **REDACTED**
12
              Defendant.
13

14        In this action, plaintiff Simpson Strong-Tie Company Inc. ("Simpson") asserts the

15   following claims against defendant Mitek Inc. ("MiTek"): (1) false advertising under the Lanham

16   Act, 15 U.S.C. § 1125(a)(1)(B); (2) false advertising under California Business & Professions

17   Code § 17500; (3) passing off under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (4) unfair

18   competition under California Business & Professions Code § 17200; (5) copyright infringement

19   under 17 U.S.C. § 106.  Dkt. No. 1.  MiTek denies these claims, and it counterclaims against

20   Simpson for breach of the parties' 2014 settlement agreement resolving prior litigation.  Dkt. No.

21   50.

22        Simpson moves for summary judgment as to all of its claims, MiTek's affirmative

23   defenses, and MiTek's counterclaim for breach of the settlement agreement.  Dkt. No. 70.  MiTek

24   moves for summary judgment that all of Simpson's claims except its copyright infringement claim

25   are barred by the doctrine of laches or by claim preclusion.  MiTek cross-moves for summary

26   judgment as to Simpson's copyright infringement claim.  MiTek also moves for summary

27   judgment on its counterclaim that Simpson breached the parties' 2014 settlement agreement.  Dkt.

28

No. 78.  The Court held oral argument on both motions.  Dkt. No. 113.  Having considered the parties' moving papers and arguments made at the hearing, the Court grants Simpson's motion for summary judgment as to MiTek's counterclaim for breach of the parties' 2014 settlement agreement, and denies the remainder of Simpson's motion.  The Court denies MiTek's motion for summary judgment.

## I.        BACKGROUND

The following facts are not disputed unless otherwise indicated:

### A.        The Parties and Their Products

MiTek and Simpson manufacture and sell thousands of competitive products in the structural connector industry.  Dkt. No. 78-9 at 32:9-12.  For decades, Simpson has held the largest market share in this industry, and MiTek is its next largest competitor.  *Id.* at 55:1-7, 103:19-104:18.  MiTek entered this industry when it acquired United Steel Products Company ("USP") in 2011.  Dkt. No. 78-9 at 67:19-22.

Structural connectors are pre-engineered products used in the construction of homes, commercial properties, and multi-unit residential properties.  Dkt. No. 71-44, § 2.2.  Connectors join, and transfer the load between, various structural members, including vertical members like studs and posts, horizontal members like floor joists and roof trusses, and foundations.  *Id.*, § 3.1.  When engineers design a structure, they may elect to use their own custom connectors, but usually engineers specify a pre-engineered connector.  *Id.* § 3.1.  When determining what connector to specify, engineers take into account the relevant attributes of the connector.  When specifying connectors on construction plans, engineers identify specific products by product name; they do not specify generic connectors.  *Id.* § 5.3.

Simpson offers many different connector product lines.  *See* Dkt. No. 71-17.  Each time Simpson develops a new connector, Simpson creates a new product name.  Dkt. No. 71-48 at 37:7-38:11, 48:9-50:15.  The product name includes both (1) a "Part Name" (e.g., "BC" for a post cap) and (2) a range of "Model Numbers" (e.g., "BC4," "BC46R," etc.).  *Id.*, 23:16-24:6.  MiTek also offers many different connector product lines.  MiTek uses alphanumeric names for its products.  *See* Dkt. No. 71-45.  Simpson identifies 51 instances where a current MiTek Part Name

United States District Court
Northern District of California

is identical to a competing Simpson Part Name.  *See* Dkt. No. 71-45; Dkt. No. 1 ¶¶ 29-31.

### B.  The Parties' Advertising

Simpson uses its product names in marketing and advertising its connectors, including on its website, on product packaging, shelf tags, and in its catalogs.  Simpson's Wood Construction Connectors Catalog contains an Alphabetical Product Index that alphabetically lists all of Simpson's Part Names.  *See, e.g.*, Dkt. No. 71-17 at 5.  Simpson holds copyright registrations on each Wood Construction Connectors Catalog dating back to the year 2000.  Dkt. No. 71-34; Dkt. No. 71-36.

MiTek also uses its product names in marketing and advertising its connectors, including on its website, in its mobile application, on product packaging, shelf tags, and in its catalogs.  Dkt. No. 73-10 at 17:5-7.  These materials also include reference numbers.  Many of these reference numbers are the same as Simpson Part Names.  *Id.* at 18:18-19:3.

### C.  Prior Litigation

In 2013, Simpson sued MiTek (then doing business as USP) for violations of Simpson's rights in a family of federally-registered STRONG-TIE trademarks.  *See Simpson Strong-Tie Company Inc. v. MiTek USA, Inc.*, No. 13-cv-1644 (N.D. Cal).  In that litigation, Simpson asserted claims for trademark infringement, dilution, and unfair competition under the Lanham Act, and unfair competition under California state law.  *See id.*, Dkt. No. 1.  Simpson claimed that USP's use of the TOUGH-TIE mark on its structural connector products infringed the STRONG-TIE mark used by Simpson on similar products.  *Id.*

After approximately ten months of litigation, the parties agreed to a settlement of the 2013 litigation.  In February 2014, they executed a written settlement agreement.  Dkt. No. 89-18.  Thereafter, the parties stipulated to the voluntary dismissal of the action with prejudice.  *See* No. 13-cv-1644 (N.D. Cal), Dkt. No. 32.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

United States District Court
Northern District of California

burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See id*. at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id*.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp*., 477 U.S. at 325).  Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial.  *Id*.  Where the party moving for summary judgment would bear the burden of proof at trial, it has the initial burden of producing evidence which would entitle it to judgment as a matter of law if the evidence went uncontroverted at trial.  *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

## III.    DISCUSSION

Both parties move for summary judgment on multiple grounds, some of which overlap. Simpson moves for summary judgment that: (1) MiTek's use of Simpson product names as reference numbers constitutes false advertising; (2) MiTek's use of Simpson product names as its own product names constitutes passing off; (3) MiTek infringes Simpson's copyrights as a matter

4

of law; (4) laches does not bar Simpson's non-copyright claims; (5) none of MiTek's other affirmative defenses have merit; and (6) Simpson did not breach the parties' 2014 settlement agreement.  MiTek moves for summary judgment that: (1) Simpson's claims for false advertising, passing off, and unfair competition are barred by the doctrine of laches; (2) Simpson's claims for false advertising, passing off, and unfair competition are barred by claim preclusion; (3) Simpson breached the parties' 2014 settlement agreement by asserting claims for false advertising, passing off, and unfair competition in view of the affirmative release contained in the agreement; and (4) MiTek does not infringe any of Simpson's copyrights as a matter of law.

The Court addresses the parties' arguments below, beginning with MiTek's arguments regarding laches, claim preclusion, and breach of the parties' 2014 settlement agreement.

### A.     MiTek's Laches Defense

MiTek moves for summary judgment on its affirmative defense that the doctrine of laches bars Simpson's claims for false advertising, passing off, and unfair competition, arguing that Simpson unreasonably delayed filing this action and that MiTek will suffer prejudice if the action is allowed to proceed.  Dkt. No. 75-1 at 14-19.  Simpson also moves for summary judgment on this defense, arguing that because it seeks only prospective injunctive relief, laches does not bar its claims, and, in any event, MiTek fails to show prejudice from Simpson's alleged delay.  Dkt. No. 96-2 at 6-20.  The Court concludes that neither party is entitled to summary judgment on this issue.

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  Laches is an affirmative defense, as to which the defendant bears the burden of proof.  *See, e.g.*, *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988).  To establish laches, a defendant must prove (1) an unreasonable delay in filing the suit by the plaintiff and (2) prejudice to itself if the suit were to continue.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012); *see also Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1108-09 (N.D. Cal. 2008).  Laches is presumed to apply where the plaintiff files suit after that applicable

statute of limitations has expired. *Jarrow Formulas, Inc.* 304 F.3d at 838. Even where laches is presumed to apply, the defendant bears the burden of showing that the plaintiff's delay was unreasonable and that the defendant suffered prejudice as a result. *Id.*

The parties do not dispute that in 1988 Simpson contacted a MiTek predecessor, taking issue with that company's similar product nomenclature and use of reference numbers in a conversion chart in marketing materials. Dkt. Nos. 78-11, 78-12, 78-13. In February 1997, Simpson contacted another MiTek predecessor, USP, complaining about that company's use of similar product nomenclature. Dkt. No. 78-16. For many years, dating back at least to the 1990s and continuing through the present, Simpson monitored catalogs from MiTek, MiTek's predecessors, and other competitors, all of which contain similar product nomenclature, reference numbers, cross-reference charts, and comparisons of product attributes. Dkt. No. 78-20 at 29:10-32:11, 33:4-35:11, 35:23- 43:7, 43:15-46:2, 48:4-78:13.

MiTek argues that Simpson learned of the conduct that underlies its claims "by at least the 1990s, if not earlier," and that its delay in filing this action is unreasonable. Dkt. No. 75-1 at 24. For its part, Simpson argues that the relevant period for consideration of MiTek's laches defense should start no earlier than 2013. Dkt. No. 96-2 at 12. Simpson observes that MiTek did not even begin selling connectors and using Simpson's product names with connectors until MiTek acquired USP in 2011, and that it was misled by certain of MiTek's statements into believing that MiTek would discontinue the practices about which Simpson earlier had complained. Dkt. No. 89-27 at 358:17-18. Simpson argues that the Court need not consider whether its delay was unreasonable because it seeks only prospective injunctive relief and laches does not apply. Dkt. No. 96-2 at 6-7.

Typically, laches does not bar prospective injunctive relief. *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018); *Jarrow Formulas, Inc.*, 304 F.3d at 840 ("Often the defendant will not be prejudiced by a bar on future conduct.") (citations omitted); *Danjaq Ltd. Liab. Co. v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001) (same); *see also Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) ("A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm.

United States District Court
Northern District of California

1    Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of

2    laches.").  However, laches may apply where a party can show evidentiary prejudice, *see, e.g.,*

3    *Danjaq LLC*, 263 F.3d at 959, or expectations-based prejudice, *RSI Corp. v. Int'l Bus. Machs.*

4    *Corp.*, No. 5:08-CV-3414 RMW, 2012 WL 3277136, at *13 (N.D. Cal. Aug. 9, 2012).

5    "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses

6    whose memories have faded, or who have died."  *Danjaq*, 263 F.3d at 955.  Expectations-based

7    prejudice occurs when a defendant "took actions or suffered consequences that it would not have,

8    had the plaintiff brought suit promptly."  *Id.*; *see also Miller v. Glen Miller Prods.*, 318 F.Supp.2d

9    923, 944 (C.D. Cal. 2004), aff'd, 454 F.3d 975 (9th Cir. 2006).  "[I]n each case, the district court

10   must weigh the plaintiff's delay and the resulting prejudice to the defendant to determine whether

11   and to what extent laches bars the requested relief, including a request for an injunction."  *Pinkette*

12   *Clothing, Inc.*, 894 F.3d at 1027.

13          MiTek contends that Simpson's delay in bringing this action caused it to suffer both

14   evidentiary prejudice and expectations-based prejudice.  In support of its own motion for summary

15   judgment, MiTek makes no showing of evidentiary prejudice.  *See* Dkt. No. 75-1 at 18.  It points

16   only to testimony from a Simpson witness, which it characterizes as reflecting an inability to recall

17   whether Simpson was the first to use the alphanumeric product names at issue.  *Id.*; *see also* Dkt.

18   No. 78-9 at 26:12-27:3, 40:19-41:11; Dkt. No. 78-20 at 89:4-14.  In its opposition to Simpson's

19   motion, MiTek additionally relies on the general assertion that "Simpson attorneys and [a

20   predecessor entity's] personnel involved in communications over 30 years ago regarding these

21   issues have retired and certain documents no longer exist."  Dkt. No. 99-3 at 41.  As Simpson

22   observes, MiTek has not identified any specific documents or other evidence that has been lost to

23   the passage of time, or explained why this evidence is material.  In addition, Simpson disputes

24   MiTek's characterization of the deposition testimony on which MiTek relies, and the Court agrees

25   that his testimony is susceptible to an alternative characterization.  Thus, MiTek has not

26   established evidentiary prejudice.

27          With respect to expectations-based prejudice, MiTek points to no evidence of any relevant

28   expectations that have been or would be prejudiced by this action or the relief Simpson seeks on

its Lanham Act and unfair competition claims.  In support of its own motion for summary judgment, MiTek offers the general assertion that "MiTek and its predecessors would have likely spent their time and money to market their structural connector business and grow their customer base in other ways."  Dkt. No. 75-1 at 18; *see also* Dkt. No. 99-3 at 34.  But MiTek provides no evidence of any such investments of time or money that would be lost or wasted if it suffers an adverse judgment on these claims.  In opposing Simpson's motion for summary judgment, MiTek makes the additional argument that it and its predecessors have "expended considerable efforts in marketing their products and providing customers with information, including product names and references numbers . . . in various catalogs, point-of-sale materials, website and mobile applications."  Dkt. No. 99-3 at 34.  However, MiTek has not established that it engaged in these efforts in reliance on Simpson not filing suit, or that it would not have engaged in these same efforts had Simpson brought its challenge earlier.  "Only expenditures made after a plaintiff 'knew or should have known about the potential claim' will support a finding of expectations-based prejudice."  *Eat Right Foods Ltd. v. Whole Foods Mkt.*, *Inc.*, 880 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000)).  Thus, MiTek has not established expectations-based prejudice.

The Court therefore concludes that MiTek is not entitled to summary judgment in its favor on its laches defense.

In support of its own motion for summary judgment, Simpson argues that it has not engaged in unreasonable delay, that MiTek has suffered no evidentiary prejudice, and that MiTek cannot claim expectations-based prejudice as a matter of law.  The record reflects a dispute of fact on the question of whether Simpson's delay in bringing this action was unreasonable.  Dkt. No. 75-1 at 16; Dkt. No. 96-2 at 12.  Likewise, whether considerations of willfulness, unclean hands, or the public interest should preclude application of a laches defense also raise disputed questions of fact.  Dkt. No. 96-2 at 18; Dkt. No. 110-3 at 6.  The Court agrees that the summary judgment record contains insufficient evidence of evidentiary prejudice.  However, the Court is not persuaded that Simpson necessarily is entitled to judgment in its favor as a matter of law based on Simpson's limiting its remedy to prospective injunctive relief.  While MiTek's summary judgment

1   evidence of expectations-based prejudice is thin, the record reflects that MiTek's use of reference

2   numbers, at least, is part of a "dual specification" marketing strategy that is central to how MiTek

3   presents its structural connectors to the relevant purchasing public.  Dkt. No. 110-3 at 4.  It is not

4   clear that MiTek would not be prejudiced by the prospective injunction Simpson advocates as a

5   matter of law, were MiTek able to establish the other necessary elements of its laches defense.

6   *See, e.g., Jarrow*, 304 F.3d at 840; *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th

7   Cir. 1984); *Miller*, 318 F. Supp. 2d at 944-45; *RSI Corp.*, No. 5:08–cv–3414 RMW, 2012 WL

8   3277136, at *13.

9       The Court therefore concludes that Simpson also is not entitled to summary judgment in its

10  favor on MiTek's laches defense.

11      **B.     MiTek's Counterclaim for Breach of Contract**

12      Both parties move for summary judgment on MiTek's counterclaim for breach of the

13  parties' 2014 settlement agreement.  MiTek principally argues that, by the terms of the settlement

14  agreement, Simpson released the claims it brings in this action, and consequently, Simpson's

15  prosecution of its claims constitutes a breach of contract.  Dkt. No. 75-1 at 21.  Simpson argues

16  that the release of claims in the 2014 settlement agreement is expressly limited to trademark

17  claims and does not apply to any of the claims in this action.  Dkt. Nos. 89-32 at 37; 96-2 at 20.

18      "The construction and enforcement of settlement agreements are governed by principles of

19  local law which apply to interpretation of contracts generally."  *Jeff D. v. Andrus*, 899 F.2d 753,

20  759 (9th Cir. 1989).  "Under California law[1], the elements of a breach of contract claim are (1) the

21  existence of a contract; (2) performance by the plaintiff or excuse for non-performance; (3)

22  defendant's breach; and (4) damages."  *Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc*.,

23  No. C 04-04813 JW, 2007 WL 9733707, at *5 (N.D. Cal. May 11, 2007).

24      The legal effect and meaning of a contract ordinarily is a question of law; and even when

25  extrinsic evidence has been received, the legal effect and meaning of whichever version of the

26  facts the trial court adopts is also a question of law.  *Citizens Utilities Co. v. Wheeler*, 156 Cal.

27  _____

28  [1] The parties' settlement agreement provides that it shall be governed by California law.  Dkt. No. 89-18 § 16.

United States District Court
Northern District of California

App. 2d 423, 432 (1957).  "[T]he outward manifestation or expression of assent is controlling, and what the language of a contract means is a matter of interpretation for the courts and not controlled in any sense by what either of the parties intended or thought its meaning to be."  *Id.* (citations omitted).  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ. Code § 1636.  For written contracts, the parties' intention is to be ascertained from the writing alone, if possible.  *Id.* § 1639.  "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  *Id.* § 1638.

"The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument."  *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1992).  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  *Pacific Gas & E. Co.*, 69 Cal. 2d at 37.  "[S]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning."  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988).

The parties dispute the correct interpretation of sections 3 and 6 of the 2014 settlement agreement.  The Court's analysis begins with an examination of the agreement's terms.  *Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal. App. 4th 1194, 1197 (1994).  Section 3 of the agreement provides:





Dkt. No. 89-18 § 3.  Section 6 of the agreement provides:

Dkt. No. 89-18 § 6.

MiTek argues that the language in section 6 operates as a general release of all claims, and that extrinsic evidence from the parties' settlement discussions indicates Simpson intended to release the claims in the current action.  Dkt. No. 99-3 at 38-40.  Simpson disputes MiTek's characterization of the parties' discussions, but contends that the release of claims is limited by its terms to the trademarks at issue in the 2013 litigation.  Dkt. No. 89-32 at 38-39.

MiTek's argument that the language in section 6 of the settlement agreement is an unqualified general mutual release of all claims known or unknown as of the date of the release is not persuasive.  The release is expressly limited to ████████████████████████████████ ████████████████████████████████████████████ Dkt. No. 89-18 § 6 (emphasis added).  The settlement agreement defines ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████ Dkt. No. 89-18 at 1 (Recitals).  As Simpson's complaint reflects, the claims in the "Suit" were limited to trademark-related matters.  *See* Dkt. No. 71-19 (complaint in No. 13-cv-1644 (N.D. Cal)).  Simpson did not allege false advertising, passing off, unfair competition, or copyright infringement in the 2013 litigation, as it does here.  *Id.*  Nothing in the settlement agreement suggests that the ██████████████████████ encompasses these claims.  To

United States District Court
Northern District of California

the contrary, the language in section 3 of the agreement confirms that the mutual release in section 6 is limited to the trademark-related claims in the 2013 litigation.  Section 3 specifies that ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ Dkt. No. 89-18 § 3.

As Simpson correctly observers, the mutual release in the parties' settlement agreement differs from the release at issue in *San Diego Hospice v. Cty. of San Diego*, 31 Cal. App. 4th 1048, 1052 (1995).  In that case, the agreement provided that the parties released all claims "past, present and *future*, known or unknown, suspected or unsuspected," without further qualification. *Id.* at 504 (emphasis added).  By contrast, the release in section 6 ███████████████ ████████████████████████████████████████████ ████████████████████████████

For these reasons, the Court concludes as a matter of law that the release in the parties' 2014 settlement agreement does not encompass Simpson's claims in this action, and Simpson has not breached that agreement by bringing this action.[2]  The Court denies MiTek's motion and grants Simpson's motion as to MiTek's breach of contract claim.

### C.    Mitek's Claim Preclusion Defense

MiTek moves for summary judgment on the issue of claim preclusion, arguing that the resolution of the parties' 2013 litigation bars Simpson's false advertising, passing off, and unfair competition claims.  Dkt. No. 75-1 at 19.  Simpson opposes the motion.  Dkt. No. 96-2 at 24-26.

Claim preclusion "applies when 'the earlier suit . . . (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.'"  *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  Simpson and MiTek do not dispute that the 2013 litigation involved the same parties as this action.  They dispute whether the 2013 litigation involved the same claims and whether it reached a final

---

[2] Because the plain language of the parties' agreement is dispositive of this issue, the Court need not consider the parties' arguments regarding extrinsic evidence or California public policy.

United States District Court
Northern District of California

1    judgment on the merits.  In addition, Simpson argues that MiTek has waived this defense by

2    failing to plead it in answer to the complaint.  Dkt. No. 96-2; Dkt. No. 50 at 9-10.

3           Simpson is correct that the Ninth Circuit has stated that "[c]laim preclusion is an

4    affirmative defense which may be deemed waived if not raised in the pleadings."  *See Clements v.*

5    *Airport Auth.*, 69 F.3d 321, 328 (9th Cir. 1995) (holding that defendant waived its claim

6    preclusion affirmative defense where defendants waited several years after the federal complaint

7    was filed and did not raise the issue in district court or in their appellate briefing).  However, the

8    Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in

9    their initial pleadings," and now permits defendants to "raise an affirmative defense for the first

10   time in a motion for summary judgment . . . if the delay does not prejudice the plaintiff."  *Magana*

11   *v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).  Simpson does not

12   contend that it has been prejudiced by MiTek's raising the defense in its motion for summary

13   judgment, and so the Court finds no waiver.

14          After the parties executed a settlement agreement, the parties stipulated to dismissal of the

15   2013 litigation with prejudice.  *See* No. 13-cv-1644 (N.D. Cal), Dkt. No. 32.  A dismissal with

16   prejudice is a final judgment on the merits.  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047,

17   1052 (9th Cir. 2005).  However, "[t]he claim preclusion 'inquiry is modified in cases where the

18   earlier action was dismissed in accordance with a release or other settlement agreement.'"

19   *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019) (quoting *U.S. ex rel.*

20   *May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013).  "A settlement can limit the scope

21   of the preclusive effect of a dismissal with prejudice by its terms."  *Id.* (quoting *U.S. ex rel.*

22   *Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir. 1998)).  "The best evidence of [the

23   parties'] intent is . . . the settlement agreement itself . . ., as interpreted according to traditional

24   principles of contract law."  *Id.* at 691 (quoting *Norfolk S. Corp.*, 371 F.3d at 1289).

25          For the reasons explained above, the Court concludes that the 2014 settlement agreement

26   resolved only trademark-related claims asserted in the 2013 litigation, and the only claims

27   dismissed with prejudice were Simpson's claims for trademark infringement, trademark dilution,

28   and unfair competition relating to the Simpson STRONG-TIE mark and MiTek's TOUGH-TIE

1    marks.  *See* Dkt. No. 71-19; No. 13-cv-1644 (N.D. Cal), Dkt. No. 32.  This action does not

2    concern these same trademarks or any other allegations regarding the use of any disputed

3    trademarks.  MiTek does not show that there is any meaningful overlap in the evidence between

4    the two actions or that they arise out of the same transactional nucleus of fact.  *See Fund for*

5    *Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992).

6          MiTek argues that Simpson *could have* brought its current claims in the 2013 litigation

7    because "Simpson was acutely aware of MiTek's and its predecessors' use of similar product

8    nomenclature and reference numbers Simpson claims as its own" at the time that litigation was

9    filed.  Dkt. No. 75-1 at 20.  In addition, MiTek points to allegations in the complaint Simpson filed

10   in the 2013 litigation concerning "the way MiTek names its products and its use of reference

11   numbers."  *Id.*  However, the authority on which MiTek relies prohibits relitigation of claims

12   arising from the same "nucleus of facts," such as by attaching a different legal label to a set of

13   allegations that were previously litigated*.  See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe*

14   *Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (plaintiff barred from "essentially

15   seeking relief from the same alleged wrongs it unsuccessfully protested before"); *Western*

16   *Systems, Inc. v. Ulloa*, 958 F.2d 864, 868 (9th Cir. 1992) (plaintiffs attempted to relitigate in

17   territorial court the same claims resolved against them in federal district court).  The Lanham Act

18   and unfair competition claims at issue in this action, and the allegations that support those claims,

19   do not involve any of the disputed marks at issue in the 2013 litigation.  Those marks are not part

20   of the alleged false advertising claims or the alleged passing off.  Likewise, the allegations

21   supporting the trademark-related claims that were actually litigated and resolved in the 2013

22   litigation are not the same as the allegations that support Simpson's Lanham Act and unfair

23   competition claims here.  Moreover, the parties' 2014 settlement agreement reflects that the

24   parties intended resolution of the 2013 litigation to be limited to the claims asserted in that action.

25          Accordingly, the Court concludes that MiTek is not entitled to summary judgment on this

26   issue, and claim preclusion does not bar Simpson's claims.

27          **D.      Simpson's False Advertising Claims**

28          Simpson moves for summary judgment on its claims for false advertising under the

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and California Business & Professions Code § 17500.[3]

2    Simpson challenges MiTek's practice of referring to Simpson product numbers as reference

3    numbers or reference series in MiTek's catalogs, product packaging, point-of-sale materials,

4    website, and mobile application.  Dkt. No. 1 ¶¶ 35-43; Dkt. No. 89-32 at 18-25.  Simpson

5    contends that this practice amounts to false advertising because it falsely implies that MiTek's

6    products are equivalent to Simpson's.[4]

7         A false advertising claim under the Lanham Act requires proof of the following elements:

8    (1) a false statement of fact by the defendant in a commercial advertisement about its own or

9    another's product; (2) the statement actually deceived or has the tendency to deceive a substantial

10   segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing

11   decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the

12   plaintiff has been or is likely to be injured as a result of the false statement, either by direct

13   diversion of sales from itself to defendant or by a lessening of the goodwill associated with its

14   products.  15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

15   1139 (9th Cir. 1997).

16        The Ninth Circuit has explained that "commercial advertising or promotion" within the

17   meaning of § 1125(a)(1)(B) requires: (1) commercial speech; (2) by a defendant who is in

18   commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy

19   defendant's goods or services; and (4) must be disseminated sufficiently to the relevant purchasing

20   public to constitute "advertising" or "promotion" within that industry.  *Coastal Abstract Serv.*

21   *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

22        "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that

23   the statement was literally false, either on its face or by necessary implication, or that the

24

25   ───────────────
     [3] MiTek does not move for summary judgment on the merits of these claims.

26   [4] To the extent Simpson's false advertising claim as originally pled separately challenged MiTek's

27   use of product names for its own products that are identical or very similar to Simpson's product
     names, the Court understands that Simpson now challenges this specific conduct as a violation of
28   15 U.S.C. § 1125(a)(1)(A) and not a violation of 15 U.S.C. § 1125(a)(1)(B).  *See* Dkt. No. 115 at
     30:24-31:7.

statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139 & n.2; *see also Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 638 (N.D. Cal. 2019) ("[P]laintiffs can establish literal falsity under the Lanham Act by alleging that two products portrayed as comparable in an advertisement are not actually comparable—that the advertisement omits differences which would have been material to recipients."). Where a statement is literally false, or intentionally misleading, consumer deception may be presumed. *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).

A false advertising claim must be material in that it is "likely to influence the purchasing decision" of consumers. *Southland Sod Farms*, 108 F.3d at 1139. Materiality "is 'typically' proven through consumer surveys," which provide direct evidence of a statement's impact. *Id.* at 1040. A plaintiff can also establish materiality by showing that "the defendants misrepresented an inherent quality or characteristic of the product." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (citation omitted); *see, e.g.*, *In-N-Out Burgers v. Smashburger Ip Holder LLC*, No. SACV 17-1474(DFMx), 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019) (finding an advertising claim material "because the amount of beef in a burger is an inherent quality or characteristic of a burger").

Where the plaintiff is a competitor suing another competitor for an injunction to prevent false advertising under the Lanham Act, the plaintiff need not prove actual injury. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989); *Southland Sod Farms*, 108 F.3d at 1145-46.

Simpson moves for summary judgment on its claim that MiTek's use of reference numbers implies that MiTek's connectors and Simpson's connectors are equivalent and that this implication is false because the evidence is undisputed that the connectors differ in material ways. Dkt. No. 71-45 (Ex. 312); Dkt. No. 89-32 at 19. These differences, Simpson says, are material to consumers' purchasing decisions, but are masked by MiTek's use of reference numbers. Dkt. No. 89-32 at 20, 23, 25. Simpson points to evidence of consumers actually confusing MiTek's products with Simpson's in the marketplace or unwittingly specifying MiTek's products in place of Simpson's, and to survey evidence suggesting consumers are deceived by MiTek's use of

16

reference numbers.  *See* Dkt. No. 71-26 at 11-14; Dkt. No. 84; Dkt. No. 89-27 at 52:20-54:21.

MiTek opposes Simpson's motion on several grounds.  MiTek principally argues that its use of reference numbers cannot be understood as an unambiguous message of "equivalency," and that Simpson's false advertising claim cannot succeed unless it makes this showing.  Dkt. No. 99-3 at 10-13.  MiTek suggests that the reference numbers could be interpreted in several ways, including as indicating that the two products have a similar geometric configuration and functionality or as a statement of equivalency as to one attribute, such as load capacity, but not others, such as number or length of fasteners required.  Dkt. No. 99-3 at 12.  MiTek also disputes Simpson's evidence of materiality, deception, and injury, and emphasizes that each of these elements presents a question of fact that cannot be resolved on summary judgment.

The Court agrees with MiTek that the contested elements of Simpson's false advertising claim and related unfair competition claim require resolution of disputed questions of fact.  For this reason, the Court denies Simpson's motion for summary judgment on its claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and California Business & Professions Code § 17500.

### E.   Simpson's Passing Off Claims

Simpson moves for summary judgment on its claims for passing off or false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and California Business & Professions Code § 17500.[5]  Simpson challenges MiTek's use of product names for its own products that are identical to the product names of Simpson's products—citing 51 instances.  Dkt. No. 89-32 at 7.  Simpson says that in adopting Simpson's product names, MiTek is passing off its products as Simpson's.  *Id.* at 26.

To establish a claim for passing off or false designation of origin under the Lanham Act, a plaintiff must show that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or

_____

[5] MiTek does not move for summary judgment on the merits of these claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    services in question.  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal.

2    2015) (*citing Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007); *Int'l Order of*

3    *Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)).  Passing off may be

4    either express or implied.  *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988).

5         With respect to the 51 MiTek product names that Simpson contends are identical to its

6    product names, Simpson bears the burden of showing that the product names serve to identify

7    Simpson as the source and that MiTek's use of those names is likely to cause confusion.  Simpson

8    offers some evidence that the product names serve a source-identifying function as well as some

9    evidence of actual confusion.  *See* Dkt. No. 71-56 at 214:22-216:23; Dkt. No. 84 at 12-13, 18-19,

10   25, 30-31.  However, this evidence, particularly the survey evidence on which Simpson relies, is

11   vigorously disputed.  *See* Dkt. No. 99-3 at 19-20.

12        The Court agrees with MiTek that the contested elements of Simpson's passing off claim

13   and related unfair competition claim require resolution of disputed questions of fact.   For this

14   reason, the Court denies Simpson's motion for summary judgment on its claims for passing off or

15   false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and California

16   Business & Professions Code § 17500.

17        **F.    Copyright**

18        Both parties move for summary judgment on Simpson's copyright infringement claim.

19   The parties agree that Simpson holds copyrights in the new material in its 2017-18 and 2019-2020

20   Wood Construction Connectors product catalogs, each of which is a derivative work.  Dkt. No. 75-

21   1 at 23; Dkt. No. 89-32 at 27.  Simpson says that the only portion of these works for which it

22   claims infringement is the Alphabetical Product Index ("API") in each catalog.  *Id.*  The accused

23   works are MiTek's 2018 and 2020 product catalogs and MiTek's Conversion Guide.  *Id.*

24   According to Simpson, MiTek infringes its copyrights because MiTek copied Simpson's APIs in

25   the Reference Number Index pages of the MiTek catalogs and in the Conversion Guide.  *Id.*

26   MiTek opposes Simpson's motion and cross-moves for summary judgment principally on the

27   ground that the APIs and the product names listed within them are not protectable material.  Dkt.

28   No. 75-1 at 23; Dkt. No. 99-3 at 21-28; Dkt. No. 110-3 at 10-15.  MiTek disputes that it has

1    copied any protected material, and contends that any such copying is *de minimis* and therefore not

2    infringing.  Dkt. No. 110-3 at 15.

3         The parties agree that the asserted works are derivative works, and that Simpson's

4    copyright protection covers only additions, changes, or new material in Simpson's 2017-18 and

5    2019-20 catalogs, and does not extend to material in prior versions of the catalogs.  *See* 17 U.S.C.

6    § 103(b).  A copyright holder has the exclusive rights to reproduce, distribute, publicly display,

7    perform, and create derivative works of the copyrighted work.  17 U.S.C. § 106.  "A plaintiff

8    bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright,

9    and (2) copying of constituent elements of the work that are original.'"  *Funky Films, Inc. v. Time*

10   *Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Publ'ns, Inc. v.*

11   *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

12        Simpson does not contend that it enjoys copyright protection over arrangement of the

13   product names in alphabetical order in the APIs.  Dkt. No. 115 at 26:7-12.  Indeed, Simpson

14   concedes that "[its claim] requires a determination that the product names were created

15   expressions, not discovered facts."  *Id.* at 24:20-21.  Thus, the first question the Court considers is

16   whether Simpson's product names are protectable original expression.

17        "To qualify for copyright protection, a work must be original to the author.  Original, as

18   the term is used in copyright, means only that the work was independently created by the author

19   (as opposed to copied from other works), and that it possesses at least some minimal degree of

20   creativity."  *Feist*, 499 U.S. at 345 (citations omitted).  "To be sure, the requisite level of creativity

21   is extremely low; even a slight amount will suffice. The vast majority of works make the grade

22   quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it

23   might be."  *Id.* (citing 1 M. Nimmer & D. Nimmer, Copyright § 1.08(C)(1) (1990)).  Under the

24   merger doctrine, courts will not protect a copyrighted work from infringement if the idea

25   underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on

26   the underlying idea.  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *see also*

27   *ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 709

28   (6th Cir. 2005).  As a general matter, product names or abbreviations that are standard or prevalent

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    in an industry are not protectable.  *See Sinai v. Bureau of Auto. Repair*, No. C-92-0274-VRW,

2    1992 WL 470699, at *2 (N.D. Cal. Dec. 21, 1992); *see also* 37 C.F.R. 202.1(a) (short names and

3    titles are not protectable works).

4         Simpson argues that its product names are the result of a creative naming process and

5    reflect that creativity.  *See* Dkt. No. 89-32 at 3-4.  It argues that the product names are not

6    "discovered facts" or the pre-determined output of a naming system, but instead reflect the

7    application of creativity and originality.  *Id.* 28-29.  While Simpson's description of its naming

8    process appears to be undisputed, the Court cannot agree that, as a matter of law, the names that

9    result from that process necessarily have the minimum level of creativity required under *Feist*.

10   Although some of Simpson's product names may be original expression, and therefore

11   protectable, at least some product names appear to reflect no or less-than-minimal creativity, such

12   as where Simpson has merely abbreviated industry standard names for connectors and combined

13   those abbreviations with numbers that correspond to industry standard means of expressing

14   functional product characteristics.  *See Ets-Hokin*, 225 F.3d at 1082; *Apple Computer, Inc. v.*

15   *Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994); *ATC Distribution Grp.*, 402 F.3d at 709;

16   *Southco*, 258 F.3d at 151; *Sinai*, No. C-92-0274-VRW, 1992 WL 470699, at *2.

17        Citing *Practice Management Information Corp. v. American Medical Association*, 121

18   F.3d 516 (9th Cir. 1997), Simpson argues that product names generated using a creative process

19   are protectable.  However, *Practice Management* is not particularly helpful here, as in that case the

20   Ninth Circuit was not asked to decide whether or to what extent the AMA's medical codes were

21   protectable.  *See id.* at 520 n.8.  Simpson also points to *American Dental Association v. Delta*

22   *Dental Plans Association*, 126 F.3d 977 (7th Cir. 1997), as supporting its argument that all of the

23   product names represent sufficiently creative original expression.  In *American Dental*, the

24   Seventh Circuit explained that classification or naming schemes can, in principle, be sufficiently

25   creative to satisfy the originality requirement of copyright protection.  However, *American Dental*

26   does not stand for the proposition that use of a naming system that involves creativity always

27   results in protectable expression.  Citing *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1374 (10th Cir.

28   1997) and *Toro Co. v. R&R Prods. Co.*, 787 F.2d 1208 (8th Cir. 1986), MiTek argues that the

1   product names are *per se* not protectable, but neither of those cases support such a categorical

2   proposition either.

3          The record presented on summary judgment reflects that there are disputed questions of

4   fact regarding which, if any, of Simpson's product names have sufficient creativity and originality

5   to qualify as protectable elements of the API.  Neither party is entitled to summary judgment on

6   this point.  *See Honeywell Int'l, Inc. v. W. Support Grp., Inc.*, 947 F. Supp. 2d 1077, 1086 (D.

7   Ariz. 2013); s*ee also  N. Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1034–35 (9th Cir.

8   1992) (declining "to accept the view that, as a matter of law the differences in the placement of

9   geometric shapes should be regarded as trivial," and holding that the "plaintiff was entitled to have

10  the validity of its copyright determined by a trier-of-fact").

11         Simpson emphasizes that its copyright infringement claim is directed to the API as a

12  whole, which it characterizes as new material in each asserted work.  *See* Dkt. No. 115 at 20:16-20

13  ("In the case of the alphabetical product index . . . the changes are far more than negligible.

14  There's a whole host of new products that are added, and a host of products that are removed

15  because for various reasons, the product's been discontinued or otherwise.  So it's a new list.").

16  MiTek challenges this thesis, pointing out that an API is merely an alphabetical listing of product

17  names and that the only new material in each API is merely the result of the inclusion of new

18  product names (and removal of the names of discontinued products) listed in alphabetical order.

19  MiTek argues that if the product names are not protectable elements, then an alphabetical listing of

20  them also is not protectable.

21         A review of Simpson's evidence suggests that only a dozen or so of the many products

22  listed in the APIs in Simpson's two catalogs are new, and that the rest of the listed products names

23  are the same as in earlier catalogs; the record does not reflect which product names have been

24  omitted or modified.  *See* Dkt. No. 71-17 at 5; Dkt. No. 71-35 at 4-5 (new products apparently

25  indicated in red text adjacent to "NEW" icon).  Even if the Court assumes that all of the new (or

26  modified) product names in the APIs at issue are protectable expression, the protection that may

27  be afforded these APIs as part of a derivative work is necessarily very thin.  The Court finds

28  persuasive MiTek's argument that any copying of the APIs that may be found in MiTek's

United States District Court
Northern District of California

21

1   Reference Number Indices or in its Conversion Guide is *de minimis* when viewed in comparison

2   to the asserted works as a whole or even in comparison to the APIs as a whole.  Dkt. No. 75-1 at

3   25.  However, considered in the light most favorable Simpson, the evidence raises a material

4   question of fact precluding summary judgment regarding the extent of MiTek's copying of any

5   protectable elements of the asserted works.  *See Design Data Corp. v. Unigate Enter., Inc.*, 847

6   F.3d 1169, 1172-73 (9th Cir. 2017).

7           Because the Court finds that triable questions of fact remain with respect to both the

8   protectable elements of the APIs and the extent of the alleged copying by MiTek, neither party is

9   entitled to summary judgment as a matter of law on Simpson's copyright infringement claim.

10          **G.      MiTek's Other Affirmative Defenses**

11          Simpson moves for summary judgment on MiTek's twelve other asserted affirmative

12  defenses.  Dkt. No. 89-32 at 36.  These defenses include that Simpson's claims are barred by any

13  statute of limitations and affirmative defenses based on the Lanham Act or Copyright Act (e.g.,

14  fair use, generic product names, product names are not protectable), estoppel, acquiescence, and

15  waiver.  *See id.*  MiTek opposes Simpson's motion and observes that Simpson's arguments are

16  conclusory.  Dkt. No. 99-3 at 36.

17          Simpson's arguments regarding these other affirmative defenses are not adequately

18  developed and do not provide a sufficient basis for the Court to find that Simpson should prevail

19  on any of them as a matter of law.  Accordingly, the Court denies Simpson's motion as to MiTek's

20  affirmative defenses.

21  **IV.     CONCLUSION**

22          For the foregoing reasons the Court grants Simpson's motion as to MiTek's counterclaim

23  of breach of the parties' settlement agreement.  The Court denies the parties' motions as to all

24  other issues.

25          **IT IS SO ORDERED.**

26  Dated: January 12, 2023

27  

28  VIRGINIA K. DEMARCHI
    United States Magistrate Judge

United States District Court
Northern District of California

22