1  Duane H. Mathiowetz (CA# 111831)
   PRACTUS, LLP
2  201 Spear Street, Suite 1100
   San Francisco, CA 94105
3  Phone: 415-501-0350
4  Email: duane.mathiowetz@practus.com

5  B. Scott Eidson (Pro Hac Vice)
   Julie C. Scheipeter (Pro Hac Vice)
6  John R. Schroeder (Pro Hac Vice)
   Judith Araujo (Pro Hac Vice)
7  STINSON LLP
8  7700 Forsyth Blvd., Suite 1100
   St. Louis, MO 63105
9  Phone:  314-863-0800
   Email:  scott.eidson@stinson.com
10 Email:  julie.scheipeter@stinson.com
11 Email:  john.schroeder@stinson.com
   Email:  judith.araujo@stinson.com
12
13 Attorneys for Defendant
   MITEK INC.
14

15                   UNITED STATES DISTRICT COURT
16                  NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
17

18
19 SIMPSON STRONG-TIE COMPANY INC.,          Case No. 5:20-cv-06957-VKD
20                          Plaintiff,
                                             **MITEK INC.'S NOTICE OF MOTION
21            v.                             AND MOTION FOR ATTORNEYS'
                                             FEES; MEMORANDUM OF POINTS
22 MITEK INC.,                               AND AUTHORITIES IN SUPPORT
                                             THEREOF**
23                          Defendant.
24                                           Date:  February 27, 2024
                                             Time: 10:00 a.m.
25                                           Crtm:  2
                                             Judge: Honorable Virginia K. DeMarchi
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on February 27, 2024, at 10:00 a.m. or as soon thereafter as this matter may be heard, before the Honorable Virginia K. DeMarchi of the United States District Court for the Northern District of California, San Jose Division, Defendant MiTek Inc. ("MiTek") will and does hereby move pursuant to Fed. R. Civ. P. 54, Civil L.R. 54-5, and 17 U.S.C. § 505 for attorneys' fees incurred in defending against the claims asserted by Plaintiff Simpson Strong-Tie Co., Inc. ("Simpson") for copyright infringement, false advertising, passing off, and unfair competition. This motion is based on this notice of motion and supporting memorandum of points and authorities, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Whether MiTek is entitled to attorneys' fees under 17 U.S.C. § 505 for defending against and prevailing on Simpson's copyright claim. Whether MiTek is entitled to attorneys' fees for defending against Simpson's false advertising, passing off, and unfair competition claims. The amount of attorneys' fees to which MiTek is entitled.

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

   a.  Overview of Simpson's Claims and MiTek's Defenses in this Case .................................. 2

   b.  Simpson's Overreaching & Evolving Copyright Infringement Claim .................................. 3

      i.  Simpson's Initial Responses to MiTek's First Set of Interrogatories ........................... 3

      ii.  Simpson's Unprepared 30(b)(6) Witness ................................................................. 5

      iii.  Simpson's Modified Copyright Claim at Summary Judgment and Trial ...................... 6

   c.  The Court's Prior Rulings Regarding Simpson's Copyright Claim .................................... 8

III.  LEGAL STANDARD ......................................................................................... 9

IV.  ARGUMENT ..................................................................................................... 9

   a.  The Court should award MiTek its full costs and attorneys' fees because it prevailed on Simpson's claims under the Copyright Act. .................................................................... 9

      i.  The factor of objective unreasonableness favors an award of attorneys' fees. ............. 10

      ii.  The remaining *Fogerty* factors favor an award of attorneys' fees. ........................... 13

   b.  MiTek is entitled to recover attorneys' fees and costs for Simpson's claims not under the Copyright Act ................................................................................................................ 15

   c.  In the alternative, if the Court determines that MiTek is not entitled to recover attorneys' fees for Simpson's claims not under the Copyright Act, the Court should apportion and award fees attributable to the copyright claim. ................................................................... 17

   d.  The fees MiTek seeks are reasonable and supported under the lodestar method. ............. 17

      i.  MiTek seeks fees for a reasonable number of hours expended on the litigation. .......... 18

      ii.  MiTek's fees reflect reasonable hourly rates. .......................................................... 19

V.  CONCLUSION ................................................................................................... 22

MITEK'S MOTION FOR ATTORNEYS' FEES

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4

*A & M Records, Inc. v. Napster, Inc.*,
5
   239 F.3d 1004 (9th Cir.2001) ...............................................................................13

6
*AK Futures, LLC v. LCF Labs, Inc.*,
7
   No. 8:21-cv-02121-JVS-ADSx, 2023 WL 2561729 (C.D. Cal. Feb. 2, 2023).................14, 15

8
*Baker v. Baker*,
   No. 16CV08931VAPJPRX, 2018 WL 6190597 (C.D. Cal. Aug. 31, 2018)...........................15
9

*In re Bluetooth Headset Prod. Liab. Litig.*,
10
   654 F.3d 935 (9th Cir. 2011) ...............................................................................18

11
*Cadkin v. Loose*,
12
   569 F.3d 1142 (9th Cir. 2009) ...............................................................................9

13
*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ...............................................................................19
14

*Carson v. Billings Police Dep't*,
15
   470 F.3d 889 (9th Cir. 2006) ...............................................................................19

16
*Choyce v. SF Bay Area Indep. Media Ctr.*,
17
   No. 13-CV-01842-JST, 2014 WL 5597274 (N.D. Cal. Nov. 3, 2014)...................................17

18
*CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*,
   No. 22-CV-02488-EMC, 2023 WL 3409463 (N.D. Cal. May 12, 2023) .....................9, 19, 21
19

*DuckHole Inc. v. NBCUniversal Media LLC*,
20
   No. CV-12-10077-BRO, 2013 WL 5797204 (C.D. Cal. Oct. 25, 2013) ...............................13

21
*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
22
   122 F.3d 1211 (9th Cir. 1997) ...............................................................................9

23
*Erickson Prods. Inc. v. Kast*,
   No. 13-CV-05472-DMR, 2022 WL 408436 (N.D. Cal. Feb. 10, 2022)...............................18
24

*Facebook, Inc. v. Holper*,
25
   No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27, 2022) ...............................21

26
*Fogerty v. Fantasy, Inc.*,
27
   510 U.S. 517 (1994)...............................................................................9, 13, 14, 15

28
- ii -

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir. 2018) ...................................................................................10

*Goldberg v. Cameron*,
    No. C-05-03534 RMW, 2011 WL 3515899 (N.D. Cal. Aug. 11, 2011) ................................11

*Good Job Games Bilism Yazilim v. Pazarlama A.S.*,
    No. 19-CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023)................................20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................................................18

*Historical Research v. Cabral*,
    80 F.3d 377 (9th Cir. 1996) ....................................................................................9

*Joe Myeress v. USA World Bus. Serv., Inc.*,
    No. 16-CV-05236-YGR (SK), 2017 WL 990587 (N.D. Cal. Mar. 3, 2017) ........................21

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016).........................................................................................10, 14

*Kourtis v. Cameron*,
    358 F. App'x 863 (9th Cir. 2009) ..............................................................................20

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ..............................................................................21

*Love v. Associated Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) ...................................................................................14

*Love v. Mail on Sunday*,
    2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ................................................................14

*Mattel, Inc v. MGA Entm't, Inc.*,
    705 F.3d 1108 (9th Cir. 2013) .................................................................................14

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir.1982) ...................................................................................20

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) .................................................................................18

*Myeress v. USA World Bus. Serv., Inc.*,
    No. 16-CV-05236-YGR, 2017 WL 976916 (N.D. Cal. Mar. 14, 2017)................................21

*Navarro v. General Nutrition Corp.*,
    No. C 03–0603, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005)........................................20

- iii -

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)................................................................10

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
    No. SACV191765JVSJDEX, 2021 WL 6103527 (C.D. Cal. Sept. 1, 2021) ...................15

*Phills v. Fey*,
    No. 2:22-cv-07698-RGK-JPR, 2023 WL 7012699 (C.D. Cal. Sept. 19, 2023) ...................10

*Randolph v. Dimension Films*,
    634 F.Supp.2d 779 (S.D. Tex. 2009) ...................10

*Recouvreur v. Carreon*,
    940 F. Supp. 2d 1063 (N.D. Cal. 2013) ...................21

*Reilly v. Wozniak*,
    No. CV-18-03775-PHX-MTL, 2021 WL 5396092 (D. Ariz. Nov. 18, 2021)...................15

*Rimini Street, Inc. v. Oracle USA, Inc.*,
    586 U.S. ----, 139 S.Ct. 873 (2019) ...................18

*Rodriguez v. Barrita, Inc.*,
    53 F. Supp. 3d 1268 (N.D. Cal. 2014) ...................18

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ...................10, 13, 15

*Shame on You Prods., Inc. v. Banks*,
    No. CV140352, 2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) ...................10, 14

*Sierra Club v. U.S. Env't Prot. Agency*,
    No. 11-cv-00846-MEJ, 2014 WL 6895928 (N.D. Cal. Dec. 8, 2014)...................20

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ...................14

*Symantec Corp. v. Logical Plus, Inc.*
    No. C 06-7963 SI, 2010 WL 2330388 (N.D. Cal. June 4, 2010)...................15

*Traditional Cat Ass'n v. Gilbreath*,
    340 F.3d 829 (9th Cir. 2003) ...................15, 17

*Viva Video, Inc. v. Cabrera*,
    9 Fed. Appx. 77 (2d Cir. 2001) ...................10

*Washington v. ViacomCBS, Inc.*,
    2021 WL 6134375 (C.D. Cal. Dec. 9, 2021) ...................20

MITEK'S MOTION FOR ATTORNEYS' FEES

**Statutes**

15 U.S.C. § 1125 ..................................................................................................2, 3, 4, 15

17 U.S.C. §§ 106, 505 ....................................................................................2, 9, 10, 18, 20

28 U.S.C. §§ 1821, 1920 .......................................................................................................18

California Business & Professions Code § 17200 .................................................................2

California Business & Professions Code § 17500 .................................................................2

**Other Authorities**

Civil L.R. 54-5 ......................................................................................................................3

Fed. R. Civ. P. 11 .......................................................................................................1, 10, 11

Fed. R. Civ. P. 30(b)(6) .........................................................................................................5

Fed. R. Civ. P. 37 ...................................................................................................................6

Fed. R. Civ. P. 52 ...................................................................................................................8

Fed. R. Civ. P. 54 ...................................................................................................................9

Case No.
5:20-cv-06957-VKD
186777213

MITEK'S MOTION FOR ATTORNEYS' FEES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4
5
6
7
8
9

Simpson's copyright claim was unworkable from the start, a fact undoubtedly known to Simpson.  Yet, Simpson chose to pursue its claim anyway.  In light of its Rule 11 pre-filing obligations—which informed Simpson of its copyright shortcomings—it proceeded to: (1) file suit on 18 registrations when 16 of them were obviously barred by the statute of limitations; (2) litigate claims for two registrations before it could articulate the scope of protection afforded those registrations; and (3) litigate broad allegations of infringement against a wide variety of MiTek works without knowing whether those allegations were even plausible.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

This strategy led to inefficient, inconsistent, and wasteful litigation.  For instance, after being threatened with sanctions motion practice, Simpson acquiesced to a second deposition of its corporate designee on copyright topics (Mr. Rotzin) because, among other things, he could not articulate the scope of protection afforded Simpson's derivative works.  After a second deposition, and Simpson agreeing to pay a portion of MiTek's attorneys' fees for this chore, Simpson still could not articulate the scope of its copyright claim.  At each stage of the litigation, Simpson's claim mutated to new, but equally implausible, theories.  In the end, Simpson (1) asserted two registrations that it eventually conceded protected only 12 or 14 product names and (2) claimed infringement of those 12 or 14 names found in MiTek's alphabetical product index and conversion guide.  At trial, Simpson realized what it should have from the beginning: the scope of copyright protection it could assert was exceedingly narrow and the accused items of infringement were nominal at best.  Through it all, MiTek was forced to guess at the claims Simpson was asserting through its copyright registrations, wasting resources needlessly. Although bad faith is not required here, there is no good faith explanation for why Simpson litigated its claims the way it did. Accordingly, for the reasons set forth more fully below, the Court should award MiTek its attorneys' fees and costs for defending against the copyright claim <u>and</u> Simpson's intertwined claims of false advertising, passing off, and unfair competition.

28

- 1 -

MITEK'S MOTION FOR ATTORNEYS' FEES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   **BACKGROUND**

### a.   **Overview of Simpson's Claims and MiTek's Defenses in this Case**

Fundamentally, each of Simpson's claims in this case was based on MiTek's product names and use of reference numbers. As stated from the beginning of the neutral statement of the case: "Simpson asserts that MiTek, its direct competitor in the construction products industry, has improperly used Simpson's product names to market and sell MiTek's competing products in two ways. First, Simpson alleges that MiTek has copied Simpson product names and used them, with no or minimal variation, as MiTek product names. Second, Simpson alleges that MiTek has used Simpson's product names, without authorization or attribution, as 'Reference Numbers' in MiTek's marketing and advertising materials." Dkt. 125 at 1:5-10. Seeking to curtail these two types of conduct, Simpson asserted five claims against MiTek at trial: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) false advertising under California Business & Professions Code § 17500; (3) passing off under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (4) unfair competition under California Business & Professions Code § 17200; and (5) copyright infringement under 17 U.S.C. § 106. *Id.* at 1:21-25.

For example, for its false advertising claims under federal and state law, Simpson contended that "MiTek's use of reference numbers falsely implies that MiTek's connectors are equivalent to Simpson's connectors for purposes of substitution." Dkt. 193 at 23:1-3. For its passing off claim, Simpson contended "that in adopting Simpson part names as its own, MiTek is passing off its products as Simpson's" and "that all of [Simpson's] part names serve a source-identifying function." *Id.* at 29:28-30:1, 30:14-15. Simpson's unfair competition claim was substantially congruent to its claims for false advertising and passing off. *Id.* at 34:15-20. Finally, for its copyright claim, Simpson contended—based on its registered copyrights in two catalogs each containing an alphabetical product index—"that the product names for the connectors and their corresponding part names reflect at least the minimal degree of creativity required for copyright protection" and "that the part names constitute protectable elements of the API" that MiTek copied. *Id.* at 35:4-5, 36:26-37:1.

- 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In defending against these claims, MiTek asserted several affirmative defenses, including laches, statute of limitations, waiver, estoppel, and acquiescence, fair use, lack of protectability, and functionality of product names, that applied to Simpson's claims both under the Lanham Act and under the Copyright Act. Dkt. 125 at 1:27-2:27. MiTek based its defenses on evidence of Simpson's awareness of MiTek's conduct, which it had complained infringed Simpson's copyrights, trademarks, and other intellectual property rights for decades prior to filing suit; evidence of the origin and creation of the product names and use of reference numbers in the industry, including from third parties; and evidence that the product names and reference numbers at issue were functional. *See, e.g.*, Eidson Decl. ¶ 2, Exs. 1, 2, 3; *see also* Dkt. 193 at 6:19-7:14, 10:15-11:23, 19:7-22:18.

The Court found in favor of MiTek and against Simpson on all of Simpson's claims. Dkt. 194.

### b.   Simpson's Overreaching & Evolving Copyright Infringement Claim

Initially, Simpson's claim for copyright infringement asserted 18 registered works—each of Simpson's Wood Construction Connectors Catalogs from the years 2000-2020—against six distinct accused works: (a) MiTek's 2020 Catalog; (b) MiTek's 2019 Catalog; (c) MiTek's 2018 Catalog; (d) MiTek's Conversion Guide; (e) MiTek's App; and (f) MiTek's website at www.mitek-us.com. Dkt. 1 at ¶¶ 21, 81-82.   Simpson's Complaint also alleged that MiTek copied and/or created substantially similar derivative works of Simpson's alphabetical product index (the "API") by publishing a reference number index that consisted of various Simpson model numbers.   Dkt. 1 at ¶¶ 41, 82.

### i.   Simpson's Initial Responses to MiTek's First Set of Interrogatories

In response to MiTek's first set of interrogatories, served April 19, 2021, Simpson narrowed its list of asserted works to two catalogs: Simpson's 2017-2018 Wood Construction Connectors Catalog and Simpson's 2019-2020 Wood Construction Connectors Catalog.  Eidson Decl., ¶ 3, Ex. 4 at 20-21.   At the same time, Simpson expanded its infringement allegations. In response to

MiTek's request for a detailed statement of the alleged similarities between protected elements of the Asserted Works and the Accused Works (i.e., a factual description of the alleged infringement), Simpson stated that the similarities include "the use of Simpson Part Names and Simpson Model Numbers in the product descriptions in the Simpson catalogs" and the "the use of Simpson Part Names and Simpson Model Numbers in the product description pages" of the accused MiTek catalogs. *Id.* at 21-23.  Thus, rather than focusing purely on the product indices in both the accused and asserted works, Simpson asserted that nearly every page of the MiTek catalogs is infringing.[1] *Id.* Simpson also maintained that MiTek's use of Simpson product names in MiTek's conversion guide, mobile application, and website reflected similarities with the allegedly protected elements. *Id.*

Adding to the confusing nature of Simpson's copyright claim, when asked for a description of the facts supporting Simpson's claim for willful infringement, Simpson strangely referred to customer confusion and deception about the quality of MiTek's products—concepts relevant only to its Lanham Act claims.  Specifically, Simpson described MiTek's use of part names and stock numbers for its own products that were allegedly "proprietary Simpson product names" and alleged that "MiTek chose to use Simpson product names in its Accused Works in order to mislead, deceive, and confuse consumers about the nature and quality of its products." *Id.* at 24.  Further muddying Simpson's copyright claim, Simpson also responded "MiTek knew that USP chose its product names to copy Simpson . . . and continued using the existing USP product names." *Id.* Thus, at this point in the litigation, Simpson argued that MiTek's selection and real-world use of similar product names *for its own products* was a part of Simpson's copyright claim—allegations distinct from its comparison of the specific asserted works and accused works.

---

[1] For example, with respect to the MiTek 2020 Catalog, Simpson asserted that the use of Simpson part names and model numbers on pages 24-381 of Simpson's 2017-2018 catalog and pages 23-338 of Simpson's 2019-2020 catalog were similar to the use of Simpson part names and model numbers on pages 22-354 of the MiTek 2020 catalog. *Id.*

- 4 -

### ii.  Simpson's Unprepared 30(b)(6) Witness

Hoping to clarify the scope and basis of Simpson's copyright claim, MiTek deposed Simpson's corporate representative pursuant to Rule 30(b)(6) on three topics (26, 27, and 28) that targeted Simpson's position on: the scope of its copyright registrations, the protectable elements in each Asserted Work, and the asserted similarities between the Asserted Works and the Accused Works (the "Copyright Topics").  Those topics were as follows:

> Topic 26: The creation and substance of Simpson's copyright registrations asserted in this litigation (the Asserted Works) and the substance of the applications for copyright registration pertaining thereto.

> Topic 27: The factual basis, detail, and description of the similarities Simpson claims exist between the Asserted Works and MiTek Product Numbers as alleged in the Complaint.

> Topic 28: The identification of all derivative works Simpson claims MiTek has created based on the Asserted Works and the identification of the similarities Simpson claims exist between the Asserted Works and the MiTek derivative works.

Eidson Decl., ¶ 5, Ex. 6.  Unfortunately, the designated corporate representative for the Copyright Topics, Stephen Rotzin, was grossly unprepared to testify about Simpson's copyright claim.

During the 30(b)(6) deposition, Mr. Rotzin was unsure about the type of work being registered for copyright protection, what Simpson claims as its copyright, the scope of the copyright, and the differences between the copyrighted material asserted in this lawsuit versus material disclaimed in prior registrations. *Id.* at ¶ 7, Ex. 8 at 120:23-121:6, 124:10-19, 139:11-141:13.  In response to multiple questions aimed at understanding Simpson's copyright claim, Mr. Rotzin non-responsively referred back to Simpson's interrogatory responses, as instructed to do by counsel. *Id.* at 148:15-23; *see also id.* at ¶ 8, Ex. 9 at 22:16-23:1, 74:17-76:17. Crucially, Mr. Rotzin was unable to clearly articulate the asserted similarities between the protectable elements of the Simpson catalogs and the MiTek accused catalogs.  Instead, at various times, Mr. Rotzin waffled between claiming the infringement related to the layout of MiTek's catalogs (Ex. 8 at 224:9-21), to MiTek's use of Simpson product names throughout its catalogs (Ex. 8 at 238:24-239:3), to MiTek's product descriptions that provide installation instructions and information about

1  materials, finish, and codes using similar terminology as that used by Simpson (Ex. 8 at 241:2-
2  246:17).[2]

3         As a result of Mr. Rotzin's lack of preparation and resulting unclear testimony—for which
4  MiTek prepared a Motion for Sanctions pursuant to Rule 37—Simpson agreed to: (1) supplement
5  its interrogatory responses to clarify its copyright claim; (2) make Mr. Rotzin available for a second
6  deposition; and (3) reimburse MiTek for a portion of the same.  Eidson Decl., ¶ 9, Ex. 10; *see also*
7  *id.* at ¶ 4, Ex. 5 Even then, Simpson struggled to articulate the bases for its claim. Simpson's
8  supplemental interrogatory responses still referred to nearly every page in the asserted catalogs
9  and accused catalogs, suggesting that Simpson's copyright claim applied to individual uses of all
10 Simpson product names.  *Id.* at ¶ 4, Ex. 5 at 9-13.  Then, in the second deposition, when asked
11 what allegedly protectable elements of the copyrights Simpson was asserting in this case, Mr.
12 Rotzin again continually directed MiTek to Simpson's interrogatory answers. For example, though
13 Mr. Rotzin testified that some text of the API was new, aside from the new products listed in the
14 API, Mr. Rotzin admitted "everything else [was] the same" from the prior year's catalog. *Id.* at ¶
15 7, Ex. 8 at 149:14-23. Then, when later asked for more detail on what new material was added
16 beyond that identified in the interrogatory response, Simpson again referred MiTek to Simpson's
17 interrogatory responses. *Id.* at ¶ 8, Ex. 9 at 35:6-38:15. Notably, during the deposition, Simpson's
18 counsel stated, and Simpson did not dispute: "'What's everything that's different in the entire
19 catalog?' . . . Simpson doesn't have the ability to say that. Nobody knows that, every word, every
20 change, every difference." *Id.* at 41:1-23.  Simpson could not articulate the scope of protection
21 afforded by the registrations of its asserted works.

22         ### iii.  Simpson's Modified Copyright Claim at Summary Judgment and Trial

23         After providing inconsistent and confusing written discovery responses and deposition
24 testimony, Simpson significantly narrowed its theory of copyright infringement at the summary

---

[2] Later, in response to questions from his own counsel, Mr. Rotzin would testify that Simpson's
infringement claim does not include the product descriptions (Ex. 8 at 298:4-299:14).

MITEK'S MOTION FOR ATTORNEYS' FEES

judgment stage. At this time, Simpson claimed that the only protectable element of its catalogs allegedly copied by MiTek was the API, and the only infringing works were (1) the two-page Reference Number Index found in MiTek's 59th and 60th edition catalogs, and (2) the two-page Conversion Guide. Dkt. 89-32 at 27:3-9. Simpson admitted its asserted copyright registrations (1) do not protect each product name, and (2) do not provide a basis for Simpson to complain about every MiTek use of Simpson's product names. *Id.* at 27:21-23. Simpson explained the narrow scope of its copyright registrations as pertaining only to the new material in its catalogs, and claimed that "the protectable portion of that new material at issue here is the Alphabetical Product Index in each asserted work." *Id.* at 27:25-28:4.

Likewise, at trial, Simpson's claim was based only on "the two-page API [alphabetical product index], which lists in alphabetical order the part names for the connectors included in the catalog" that spanned hundreds of pages. Dkt. 193 at 35:2-5, 35:24-36:2. As the Court concluded, "[t]he API in Simpson's 2017-2018 catalog contains at most 20 'new' part names . . . . The API in Simpson's 2019-2020 catalog contains at most 14 'new' part names." *Id.* at 37:14-17. The Court further noted that "Simpson did not specifically identify for the Court which new part names appeared in which of MiTek's accused works. . . . However, the Court compared the Simpson and MiTek materials in evidence and, so far as the Court can tell, MiTek's catalogs and Reference Number Guide collectively include no more than 12 of the new Simpson product names." *Id.* at 38:3-10. And so, what started as accusations claiming protectability of hundreds of pages of product catalogs and accusing hundreds of pages of catalogs and other electronic media of infringement, ended up at trial as a claim asserting 14 product names in a table of contents against the two-page reference number index found in two MiTek Catalogs and MiTek's two-page Conversion Guide.

- 7 -

### c. The Court's Prior Rulings Regarding Simpson's Copyright Claim

On numerous occasions prior to its Judgment, the Court commented on Simpson's copyright claim:

- In its April 5, 2021 Order Denying MiTek's Motion to Dismiss, "the Court agree[d] that MiTek raise[d] serious questions about the protectability of Simpson's product names and alphabetical index," but ruled that it "would benefit from a fuller record before deciding the issue" and denied MiTek's motion to dismiss Simpson's copyright claim. Dkt. 43 at 8:15-20.

- Hearing Simpson's argument supporting its copyright claim on summary judgment, the Court stated "that's the thing I'm really having difficulty with because, you know, I agree that just the part names standing alone, you couldn't have a copyright claim. . . . But then you put them altogether in an index which doesn't require any creativity to compile, it just happens to be where those part names show up in your catalog, it starts to sound very much like the White Pages. So these are names of parts instead of names of people. And it just does not strike me as really plausible to say that that's how you framed it is really a plausible copyright claim." Eidson Decl., ¶ 10, Ex. 11 at 23:16-24:3.

- In its January 12, 2023 Order Regarding Motions for Summary Judgement, the Court explained "[e]ven if the Court assumes that all of the new (or modified) product names in the APIs at issue are protectable expression, the protection that may be afforded these APIs as part of a derivative work is necessarily very thin. The Court finds persuasive MiTek's argument that any copying of the APIs that may be found in MiTek's Reference Number Indices or in its Conversion Guide is *de minimis* when viewed in comparison to the asserted works as a whole or even in comparison to the APIs as a whole." Dkt. 122 at 21:25-22:2.

- During MiTek's Rule 52 motion after the close of Simpson's case, the Court again keyed in on the issue of *de minimis* copying, stating "[t]here's not that many new products, and then I ask, what was copied. And so you have the catalogs as a whole, more than 300 pages, you have the two page API, and then you have the new material because you're not protecting the alphabetical arrangement of them and you're not protecting products that were already in there from before. So how is that not *de minimis*?" Eidson Decl., ¶ 11, Ex. 12 at 898:10-17.

Ultimately, the Court held that "Simpson has not met its burden to show that MiTek's copying is sufficient in terms of quantity or quality to render the accused works substantially similar to the asserted works; instead, the Court f[ound] that the copying is de minimis." Dkt. 193 at 39:10-12. Moreover, because the Asserted Works were not highly creative, the amount of copying was *de minimis*, the material copied was qualitatively insubstantial, and the copying had

- 8 -

no effect on the market of the copyrighted works because there is no market for the catalogs themselves but only for the products described therein, "the Court conclude[d] that MiTek's copying, even if it were actionable, constitutes fair use." *Id.* at 39:17-40:19.

## III.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 54 and Civil L.R. 54-5, a party may move for attorneys' fees if such fees are allowed by statute. To this end, as the statutory basis for MiTek's motion for attorneys' fees, Section 505 of the Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. At their discretion, "[d]istrict courts have two tasks in applying § 505: first, deciding whether an award of attorney's fees is appropriate and, second, calculating the amount of the award." *Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009). "Exceptional circumstances" are not a prerequisite to awarding fees under the Copyright Act. *See Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996).

## IV.   ARGUMENT

### a.   The Court should award MiTek its full costs and attorneys' fees because it prevailed on Simpson's claims under the Copyright Act.

When evaluating the appropriateness of an award of attorneys' fees and costs under 17 U.S.C. § 505, courts in the Ninth Circuit consider the *Fogerty* factors set forth by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994): "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-CV-02488-EMC, 2023 WL 3409463, at *8 (N.D. Cal. May 12, 2023) (quoting *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997)).

- 9 -

### i. The factor of objective unreasonableness favors an award of attorneys' fees.

In determining whether an award of attorneys' fees and costs is appropriate under 17 U.S.C. § 505, courts place particular emphasis on the objective reasonableness of the losing party's factual and legal assertions. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1043 (9th Cir. 2018). "'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 Fed. Appx. 77, 80 (2d Cir. 2001). The emphasis on this factor "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Phills v. Fey*, No. 2:22-cv-07698-RGK-JPR, 2023 WL 7012699 (C.D. Cal. Sept. 19, 2023) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205 (2016)). For example, in *Shame on You Productions, Inc. v. Banks*, the Ninth Circuit upheld a finding of objective unreasonableness and the related fees award because the asserted and the accused works were, objectively speaking, not substantially similar. 893 F.3d 661, 667 (9th Cir. 2018); *see also Randolph v. Dimension Films*, 634 F.Supp.2d 779, 794-95 (S.D. Tex. 2009) (collecting cases where objective unreasonableness was found because substantial similarity was not a close or complex call). In this case, the Court should award fees and costs based on the objective unreasonableness of Simpson's copyright claim, which is reflected in a number of significant ways.

From the beginning, Simpson struggled to articulate or formulate an actionable copyright claim. When it filed this lawsuit in October 2020, Simpson claimed infringement of 18 product catalogs against six MiTek accused works, including three distinct catalogs, a conversion guide, MiTek's App, and MiTek's website. Dkt. 1 at ¶ 21; ¶¶ 81-82.  This is problematic, and raises significant Rule 11 issues in three main ways.

First, Simpson knew, or should have known, that it could not assert all 18 copyright registrations listed in its Complaint because the statute of limitations would preclude claims of infringement relating to its earlier registrations—yet Simpson asserted these registrations anyway. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 669-70 (2014) (noting the three-year

statute of limitations on copyright suits).  This act alone renders Simpson's actions objectively unreasonable.  *See, e.g., Goldberg v. Cameron*, No. C-05-03534 RMW, 2011 WL 3515899, at *4 (N.D. Cal. Aug. 11, 2011) ("Goldberg's pursuit of claims barred by the statute of limitations was sufficient in itself to render his claims against Cameron objectively unreasonable.").  Second, pursuant to Rule 11, Simpson was under an affirmative duty to investigate as to law and fact before filing suit.  Fed. R. Civ. P. 11.  Here, Simpson asserted derivative works, yet it had no understanding of the scope of protection afforded by the registrations of those derivative works— as confirmed by its corporative representative and counsel during the Simpson corporate deposition.  It is obvious that Simpson made no effort to determine how broadly its derivative registrations might have protected its works prior to filing suit.  Third, because Simpson did not understand the scope of protection afforded by its asserted copyright registrations, it had no reasonable basis to articulate which MiTek activities/media make up the allegedly infringing conduct, which is why Simpson's initial accusations took a kitchen-sink approach and accused almost all MiTek media.

Without a sufficient understanding of its copyright causes of action at the outset, Simpson altered its claims mid-litigation.  From its first discovery response in April 2021 until summary judgment briefing in September 2022, Simpson asserted a copyright claim based on vast portions of *two* of its product catalog registrations, which Simpson conceded were derivative works that reflected facts not subject to copyright protection. Eidson Decl., ¶ 4, Ex. 5 at 4-7. Confusingly, Simpson initially claimed that using Simpson's product names as reference numbers individually on product description pages made nearly every page of MiTek's catalog similar to nearly every page of Simpson's catalog. *Id.* at ¶ 3, Ex. 4 at 21-23.

Attempting to gain an understanding, MiTek asked Simpson to articulate the nature of its copyright claim during the corporate deposition process.  However, Mr. Rotzin could not provide basic information about the scope and substance of the claim. Twice. *Id.* at ¶ 9, Ex. 10. Simpson could not identify what it claimed as its copyright. *Id.* at ¶ 7, Ex. 8 at 120:23-121:6, 124:10-19,

139:11-141:13. Simpson could not identify the "new" material in its catalogs subject to copyright protection. *Id.* at 142:7-14, 143:3-22, 144:2-25, 145:2-7; ¶ 8, Ex. 9 at 28:13-32:22, 34:12-36:17, 41:10-23, 47:24-48:3. Simpson could not identify what it asserted was similar between its works and the accused MiTek catalogs. *Id.* at ¶ 7, Ex. 8 at 224:9-20, 238:24-239:3, 241:2-246:17. Instead, Simpson continually referred MiTek back to its interrogatory responses that claimed broad protection and accused many different forms of MiTek's marketing and advertising materials. *Id.* at 148:15-23; ¶ 8, Ex. 9 at 22:16-23:1, 35:6-38:15; ¶ 3, Ex. 4 at 20-21; ¶ 4, Ex. 5 at 3-7. Even after Simpson granted MiTek another deposition to avoid sanctions motion practice—and agreed to reimburse MiTek a portion of its fees—Simpson's corporate representative failed to adequately define the scope of its asserted registrations and infringement theories.

When confronted with summary judgment briefing on the issue shortly before trial, Simpson refashioned its claim. Dkt. 89-32 at 27:3-9; *see also* Dkt. 78 at 23-40 (MiTek's motion for partial summary judgment on Simpson's copyright claim). At that time and through its case-in-chief, Simpson significantly trimmed the elements of the asserted works it claimed as protectable and infringed, and similarly reduced the media accused of infringement. Dkt. 89-32 at 27:3-9; Dkt. 193 at 35:2-5, 35:24-36:2. It wasn't until the case was ready for trial that Simpson narrowed its claim to assert only the new material in the API of two Simpson catalogs against the alphabetical product index in two MiTek catalogs and the MiTek Conversion Guide. Gone were 16 other registrations and claims of infringement relating to product description pages, websites, and apps. *See, e.g.,* Dkt. 1 at ¶ 82.

Throughout the litigation, Simpson was well aware of the gravity of these concerns and others, as the Court (and MiTek) continually expressed skepticism about the scope and viability of Simpson's copyright claim. *See* Dkt. 43 at 8:15-20 (at the motion to dismiss stage); Eidson Decl., ¶ 10, Ex. 11 at 23:16-24:3 (at the summary judgment stage); Dkt. 122 at 21:25-22:2 (same); Eidson Decl., ¶ 11, Ex. 12 at 898:10-17 (at the close of Simpson's case-in-chief). The Court noted fundamental holes in the plausibility of Simpson's claim, including the protectability of the

elements Simpson identified and the substantial similarity of the asserted and accused works. *Id.* Nevertheless, Simpson continued to pursue a meritless claim for copyright infringement. Ultimately, the Court ruled that "[e]ven if [it] were to find, as Simpson urges, that the API as a whole is entitled to protection and that MiTek copied most of Simpson's API from each catalog, the Court reaches the same conclusion—namely, MiTek's copying of most of a two-page index of part names from a catalog that exceeds 300 pages **is so insubstantial** in each instance that the accused work is not substantially similar to the asserted work." Dkt. 193 at 39:5-9 (emphasis added). As in *Shame on You Productions*, there is a clear lack of substantial similarity between the protectable elements of the asserted works here. 893 F.3d at 667.

Simpson's copyright claim was doomed from the start—a fact undoubtedly known to Simpson as it pursued claims of copyright infringement where no copyright protection existed. Whether it was an intentional misuse of its copyright registrations, or the result of an insufficient pre-filing investigation, Simpson charted an impossible and inconsistent course of copyright infringement that was objectively unreasonable.  This favors an award of attorneys' fees to MiTek. *See, e.g.*, *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1026 (9th Cir.2001) (noting that the equitable doctrine of copyright misuse "forbids a copyright holder from secur[ing] an exclusive right or limited monopoly not granted by the Copyright Office" and "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly") (internal citation and quotations omitted).

### ii.  The remaining *Fogerty* factors favor an award of attorneys' fees.

Due to the lack of merit of Simpson's copyright claim, the other *Fogerty* factors likewise support or are neutral as to an award of attorneys' fees. For example, the factor of degree of success favors an award of attorneys' fees to MiTek, as MiTek prevailed entirely on the merits of Simpson's copyright claim, with the Court holding that any copying was *de minimis* and constituted fair use. Dkt. 193 at 39:10-12, 39:17-40:19. *See DuckHole Inc. v. NBCUniversal Media LLC*, No. CV-12-10077-BRO, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013) (finding that the degree of success

- 13 -

weighs more in favor of a party who prevailed "on the merits, rather than a technical defense").

The factors of frivolousness and motivation also favor a fee award because the baselessness of the claim and late-term reconstruction of its bases, discussed above with regard to the objective unreasonableness of the claim, indicate that Simpson's copyright claim was not well-founded or motivated by the desire to protect specific copyrights.[3]

Finally, the consideration of deterrence and compensation as a way to promote the purposes of the Copyright Act strongly favors an award here. "When a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (citing *Fogerty*, 510 U.S. at 527). Further such an award would deter "over-aggressive copyright prosecution" that is contrary to the purpose of the Act, which means to "enrich[ ] the general public through access to creative works." *See AK Futures, LLC v. LCF Labs, Inc.*, No. 8:21-cv-02121-JVS-ADSx, 2023 WL 2561729, at *3 (C.D. Cal. Feb. 2, 2023) (citing *Kirtsaeng*, 579 U.S. at 204 and *Shame on You Prods., Inc. v. Banks*, No. CV140352, 2016 WL 5929245, at *11 (C.D. Cal. Aug. 15, 2016)). Such is the case here where MiTek ultimately won on the merits.

Simpson started by asserting copyright claims it knew were precluded by the statute of limitations. In addition, it made no effort to understand the scope of its copyright protection—which was narrow—prior to making broad allegations of infringement. MiTek funded the defense against these broad allegations, even though they were ill-conceived, ever-changing, and unsupportable. "There is a need in this case to compensate Defendants for the costs incurred in defending this action, and to deter Plaintiff from advancing unsupportable claims." *Love v. Mail on Sunday*, 2007 WL 2709975, at *5 (C.D. Cal. Sept. 7, 2007), *aff'd sub nom. Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010). This is particularly true here where the parties are competitors and frequently engaged in competitive litigation.

---

[3] Findings of frivolousness and bad faith motivation, in any event, are not required to award attorneys' fees under the Copyright Act. *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

- 14 -

Accordingly, the *Fogerty* factors weigh in favor of the Court's awarding MiTek attorneys' fees.

### b. MiTek is entitled to recover attorneys' fees and costs for Simpson's claims not under the Copyright Act.

A prevailing party under the Copyright Act is entitled to recover fees incurred against claims that involve a "common core of facts" *or* were based on "related legal theories." *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018); *see also Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003); *Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL 5396092, at *5 (D. Ariz. Nov. 18, 2021), *aff'd*, No. 21-16140, 2023 WL 142545 (9th Cir. Jan. 10, 2023)). That is, if the copyright and non-copyright claims are related, then no apportionment is required and all fees are recoverable. *See, e.g.*, *Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV191765JVSJDEX, 2021 WL 6103527 (C.D. Cal. Sept. 1, 2021); *Shame On You Prods*, 893 F.3d 661; *Baker v. Baker*, No. 16CV08931VAPJPRX, 2018 WL 6190597 (C.D. Cal. Aug. 31, 2018). In such instances, "apportionment of fees distinguishing the hours expended defending itself against the Copyright Act versus the Lanham Act is unnecessary." *AK Futures, LLC v. LCF Labs, Inc.*, No. 8:21-cv-02121-JVS-ADSx, 2023 WL 2561729, at *4 (C.D. Cal. Feb. 2, 2023).

For example, in *AK Futures*, the court found that the Copyright Act and Lanham Act claims were related because the claims "arose out of a common core of facts: that Mothership shipped or caused to be shipped products that improperly bore the 'Cake' design logo." *Id.* Similarly, in *Symantec Corp. v. Logical Plus, Inc.*, the court found that claims of trademark infringement and false designation of origin under the Lanham Act were related to a copyright infringement claim under the Copyright Act, where the claims "all arose out of the same facts, namely Chang's sales of counterfeit products containing Symantec's trademarks and copyrighted material." No. C 06-7963 SI, 2010 WL 2330388, at *4 (N.D. Cal. June 4, 2010).

In this case as well, Simpson's copyright claim and non-copyright claims are related and support a non-apportioned award of attorneys' fees to MiTek. Each claim here—for false

- 15 -

advertising, passing off, unfair competition, and copyright infringement—was centered around the parties' product names and how MiTek marketed and advertised its products using its own product names and Simpson's product names as reference numbers. Dkt. 125, 1:5-10. That is, all of Simpson's claims here are related to the common core of facts regarding MiTek's using similar product names and reference numbers in marketing and advertising materials, and all of the claims required evaluating and presenting evidence on the similarities and differences between the same sets of Simpson and MiTek product names and Simpson and MiTek marketing and advertising materials. Dkt. 193 at 23:1-3, 29:28-30:1, 30:14-15, 34:15-20, 35:4-5, 36:26-37:1 (Joint Pretrial Statement explaining relationship of claims to product names and use of reference numbers).

Each of the claims relied on investigating and presenting facts pertaining to the parties' catalogs, websites, and other marketing and point-of-sale materials and the use of product names therein. For example, when Simpson asserted (i) that its claim for copyright infringement was based on the use of Simpson product names on MiTek's product description pages in its catalogs (Interrogatory No. 15) and (ii) that MiTek's use of similar product names was willful copyright infringement (Interrogatory No. 16), this meant the copyright claim overlapped substantially with Simpson's other claims for false advertising, passing off, and unfair competition from a discovery perspective. *See* Eidson Decl., ¶ 3, Ex. 4 at 21-24. MiTek took discovery, including third party depositions, to establish who first created or owned the product names and who developed the product naming scheme and practice of using reference numbers in order to underscore its positions on all of Simpson's claims. Similarly, Simpson sought broad discovery that failed to distinguish between its various claims. For example, none of the topics in its 30(b)(6) notice to MiTek expressly cover Simpson's copyright claim; there are no topics regarding MiTek's knowledge of Simpson's copyright or whether it actually copied the API when creating its own catalogs. *Id.* at ¶ 6, Ex. 7. Instead, the topics generally cover MiTek's use of Simpson product names both in the accused works and otherwise (*see id.*, Topic 5). MiTek also asserted and developed affirmative defense theories common to Simpson's copyright and non-copyright claims,

- 16 -

including, among others, its laches defense. That defense specifically was based on, *inter alia*, Simpson's sending MiTek correspondence for decades specifically indicating that Simpson believed MiTek's practices to be infringing Simpson's copyright, trademark, and other intellectual property rights. *Id.* at ¶ 2, Exs. 1, 2, 3.

And, ultimately, all of Simpson's claims similarly failed because Simpson was not able to use the common core of facts to support its theory that MiTek should be enjoined from its product naming and reference number use practices. Given that the claims are related—and the discovery pursued by the parties overlapped—the Court should not apportion attorneys' fees between Simpson's Copyright Act, Lanham Act, and state law claims and should instead award MiTek recovery of attorneys' fees on Simpson's five claims in the amount of $1,467,953.15.

> **c.   In the alternative, if the Court determines that MiTek is not entitled to recover attorneys' fees for Simpson's claims not under the Copyright Act, the Court should apportion and award fees attributable to the copyright claim.**

In the alternative, if the copyright and non-copyright claims are deemed unrelated, then the Court can apportion fees and allow MiTek to recover fees attributable to the copyright claim. "[T]here is no precise rule or formula for making these determinations," and "the court necessarily has discretion in making this equitable judgment." *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 834-35 (9th Circ. 2003) (internal citations omitted); *see also Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2014 WL 5597274 (N.D. Cal. Nov. 3, 2014), aff'd, 669 F. App'x 863 (9th Cir. 2016). To this end, as supported further below, MiTek made reasonable attempts to determine the attorneys' fees related to the copyright claim, by identifying fees related specifically to the copyright claim and adding to this one-fifth of the attorneys' fees related to all claims including the copyright claim, totaling $305,486.43.

> **d.   The fees MiTek seeks are reasonable and supported under the lodestar method.**

Finally, when evaluating the reasonableness of the calculation of attorneys' fees in a copyright infringement action, courts in this Circuit use the lodestar method. Under this approach,

- 17 -

1
2
3
4
5
6
7
8
9
10

the amount of recoverable fees is the "lodestar," which is equal to "the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation)" multiplied by "a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2022 WL 408436 at *3 (N.D. Cal. Feb. 10, 2022) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This case was tried to the Court over nine days. The trial represented the culmination of almost two-and-a-half years of litigation. As such, the attorneys' fees and costs sought by MiTek reflect both a reasonable number of hours spent and reasonable hourly rates and so should be awarded as sought.[4]

11
12

      **i.**   **MiTek seeks fees for a reasonable number of hours expended on the litigation.**

13
14
15
16
17
18
19
20
21
22
23

While the court "should . . . exclude from the lodestar fee calculation any hours that were not reasonably expended, such as hours that are excessive, redundant, or otherwise unnecessary," *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1281 (N.D. Cal. 2014), "by and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). In accordance with its burden on this front, MiTek has submitted detailed time records justifying the hours its seeks fees for expending. *See Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2022 WL 408436 (N.D. Cal. Feb. 10, 2022). Based on these, MiTek requests fees for the time expended in defending against all of Simpson's claims during the course of this litigation. Eidson Decl., ¶ 13(a), Ex. 13. The attorneys and support staff performing the tasks were qualified and experienced to perform the work. Eidson Decl., ¶¶ 15-17, Exs. 18, 19. The hours

24
25
26
27
28

---

[4] MiTek also seeks costs allowed under the Copyright Act. 17 U.S.C. § 505. The costs allowed under Copyright Act are co-extensive with the costs available under the relevant law, namely 28 U.S.C. §§ 1821, 1920. *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. ----, 139 S.Ct. 873, 881 (2019). As such, MiTek hereby incorporates by reference its Verified Bill of Costs and supporting documentation submitted pursuant to those statutes. Dkt. 196. MiTek does not request double recovery of the allowable costs, rather, MiTek seeks that the Court either award its costs pursuant to this Motion or pursuant to MiTek's Bill of Costs.

1
2
3
4

expended by each of these individuals were necessary for MiTek's defense in this action against Simpson's claims and are supported by time entry records that were kept contemporaneously and in accordance with standard practices. Eidson Decl., ¶¶ 14, 19-20, Exs. 14, 15, 16, 17; Mathiowetz Decl., ¶¶ 3, 5-6.

5
6
7
8
9
10
11
12
13
14

To the extent the Court is inclined to make an apportionment, MiTek also presents the time spent in relation to the copyright claim. Eidson Decl., ¶ 13(b), Ex. 13. In this apportioned calculation of hours, MiTek summed the number of hours specific to defending against the copyright claim and one-fifth of the hours spent on tasks generally applicable to all five of Simpson's claims, with the one-fifth representing the copyright claim. *Id.*.[5] Here too, the number of hours were necessary for MiTek's defense against Simpson's copyright claim in this action and are supported by detailed time entry records describing the work completed in relation to the copyright claim, which were kept contemporaneously and in accordance with standard practices. Eidson Decl., ¶¶ 14, 19-20, Exs. 14, 15, 16, 17; Mathiowetz Decl., ¶¶ 3, 5-6.

15

### ii.  MiTek's fees reflect reasonable hourly rates.

16
17
18
19
20
21
22
23

As the next step in the lodestar analysis, MiTek must demonstrate that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted). In reviewing the reasonableness of hourly rates, "the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citations omitted). "Typically, 'affidavits of the [parties'] attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.'" *CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-CV-02488-

24
25
26
27
28

---

[5] To be clear, MiTek did not include any time specific to its counterclaims under any calculation of the number of hours spent. Eidson Decl., ¶ 13. Moreover, while the work depicted in the invoices for Ms. Scheipeter includes time spent on the second deposition of Simpson's corporate representative regarding Simpson's copyright claim, Mr. Rotzin on July 15, 2022, Simpson previously agreed to reimburse MiTek for the costs incurred in preparing for this deposition and MiTek does not include these costs in its total amount of fees sought. *See id.* at Ex. 13 (showing deduction of $7,000).

- 19 -

EMC, 2023 WL 3409463, at *9 (N.D. Cal. May 12, 2023) (internal citations omitted); *see also Washington v. ViacomCBS, Inc.*, 2021 WL 6134375, at *4 (C.D. Cal. Dec. 9, 2021) (noting "sworn declarations of knowledgeable counsel who practice in the relevant market constitute probative evidence supporting the reasonableness of a fee applicant's hourly rates"). The Court can also rely "on its own judgment and experience" in determining a reasonable hourly rate, *Navarro v. General Nutrition Corp.*, No. C 03–0603 SBA, 2005 WL 2333803, *9 (N.D. Cal. Sept. 22, 2005), as well as other courts' determinations of reasonable hourly rates in the same district. *See, e.g.*, *Sierra Club v. U.S. Env't Prot. Agency*, No. 11-cv-00846-MEJ, 2014 WL 6895928, at *18 (N.D. Cal. Dec. 8, 2014).

"[B]illing rates usually reflect, in at least a general way, counsel's reputation and status." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir.1982). Moreover, "actual rates of charges by counsel ha[ve] consistently been held to be reasonable under 17 U.S.C. §505." *Good Job Games Bilism Yazilim v. Pazarlama A.S.*, No. 19-CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023); *see also Kourtis v. Cameron*, 358 F. App'x 863, 868 (9th Cir. 2009) (holding "district court's calculation of an attorney's fee award . . . based on the actual rates charged by [defendant's] attorneys was reasonable under 17 U.S.C. § 505"). Throughout this case, MiTek's trial attorneys charged the following hourly rates, with ranges attributable to annual rate increases that occurred as the case progressed:

| Attorney Name | Title | Hourly Rates |
|---|---|---|
| B. Scott Eidson | Partner | $475-$645 |
| Julie Scheipeter | Partner | $330-$500 |
| Duane Mathiowetz | Partner | $500 |
| Judith Araujo | Associate | $280-$415 |

Eidson Decl., ¶ 14, Exs. 14, 15, 16, 17.[6] Other than local counsel, Mr. Mathiowetz, MiTek's attorneys' are employed by a Midwest-based firm whose rates are generally below the market

---

[6] This chart focuses on the members of the trial team and is representative of rates charged by other attorneys at similar levels of experience who performed work on the case. Hourly rates for additional personnel from whom MiTek is seeking fees are also set forth in Exhibits 14, 15, 16, 17.

amounts in this District. Eidson Decl., ¶¶ 19, 21; Mathiowetz Decl., ¶¶ 5, 7. These rates are reasonable. Eidson Decl., ¶¶ 21-22; Mathiowetz Decl., ¶¶ 7-8.

Cases in this District also support the reasonableness of the rates of MiTek's attorneys' fees. *See CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-CV-02488-EMC, 2023 WL 3409463, at *9 (N.D. Cal. May 12, 2023) (finding that $575/hour for the work of two senior attorneys with 24 and 19 years of experience, respectively; $435/hour for a senior associate attorney with four years of experience; $300/hour for one associate attorney with two years of experience; and $195/hour for legal assistants, paralegals, and law clerks are "are in line with the prevailing market rate" in the Northern District of California); *Facebook, Inc. v. Holper*, No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27, 2022), *report and recommendation adopted as modified*, No. C 20-06023 WHA, 2022 WL 17169836 at *15 (N.D. Cal. Nov. 22, 2022) (determining that $530 per hour for second-year associates, up to $725 per hour for a senior associate with significant practice experience, up to $780 per hour for a counsel with nearly twenty years of experience, and up to $1,165 per hour of an office managing partner with thirty years of experience "are within the reasonable range of the local market"); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (allowing attorney's fees of $700/hour for an attorney with more than 20 years of experience and that "has spoken at several law schools and bar meetings, and has served as lead counsel on a number of trademark cases"); *Joe Myeress v. USA World Bus. Serv., Inc.*, No. 16-CV-05236-YGR (SK), 2017 WL 990587 at *6 (N.D. Cal. Mar. 3, 2017), *report and recommendation adopted sub nom. Myeress v. USA World Bus. Serv., Inc.*, No. 16-CV-05236-YGR, 2017 WL 976916 (N.D. Cal. Mar. 14, 2017) (finding "$415 an hour for lead associate counsel with 8 years of experience, $395 an hour an associate with 4 years of experience and paralegal assistance at $295 per hour" reasonable); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (noting that "reasonable hourly rates . . . for paralegals and litigation support staff [range] from $150 to $240" in the Bay Area). In view of these cases and the prevailing rates in the District, the rates MiTek seeks are reasonable.

- 21 -

1

2

Ultimately, multiplying the hours spent by MiTek's attorneys by the rates charged over the

years of the case, MiTek seeks the following fees:

3

4

- **Total Fees for Work Related to All Claims: $1,467,953.15**

- **Total Fees for Work on Copyright Claim + 1/5 Time Spent on Claims Generally:**
  **$305,486.43**

5

6

Eidson Decl., ¶ 13.

7

## V.   <u>CONCLUSION</u>

8

Simpson asserted a copyright claim that was unsupported by the facts and the law, but

required MiTek to invest significant resources to defend against allegations that were implausible

at the start.  Ultimately, MiTek prevailed on each of Simpson's claims.  Accordingly, the Court

should award MiTek $1,467,953.15 in attorneys' fees and costs incurred in defending against

Simpson's claims. In the alternative, if the Court determines that MiTek can only recover fees

incurred in defending against Simpson's copyright claim, the Court should award MiTek

$305,486.43.

9

10

11

12

13

14

15

16

17

18

Date: January 13, 2024.                           Respectfully submitted,

19

20

By: <u>*/s/ Duane H. Mathiowetz*</u>
    Duane H. Mathiowetz (CA# 111831)
    PRACTUS, LLP
    201 Spear Street, Suite 1100
    San Francisco, CA 94105
    Phone: 415-501-0350
    Email: duane.mathiowetz@practus.com

    B. Scott Eidson (Pro Hac Vice)
    Julie C. Scheipeter (Pro Hac Vice)
    John R. Schroeder (Pro Hac Vice)
    Judith Araujo (Pro Hac Vice)
    STINSON LLP
    7700 Forsyth Blvd., Suite 1100

21

22

23

24

25

26

27

28

- 22 -

St. Louis, MO 63105
Phone:  314-863-0800
Email:  scott.eidson@stinson.com
Email:  julie.scheipeter@stinson.com
Email:  john.schroeder@stinson.com
Email:  judith.araujo@stinson.com

Attorneys for Defendant MITEK INC.